496 So.2d 1146 (1986)
Eddie ROBERTS
v.
AMSTAR CORPORATION, et al.
No. CA-5180.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
*1147 John W. deGravelles, Baton Rouge, for plaintiff-appellant.
J. Michael Johnson, Stephen P. Beiser, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants-appellees.
Before, WARD, ARMSTRONG and HUFFT, JJ.
WARD, Judge.
The issue presented in this appeal is whether summary judgment should have been granted dismissing Eddie Roberts' tort suit on the grounds that his exclusive remedy against Amstar Corporation for a work-related injury is under the worker's compensation statute. We reverse the summary judgment.
Roberts, a pipefitter, was employed by Custom Structures, Inc. which had contracted with Amstar Corporation for the replacement of a water line for turbines which produce electric power at Amstar's sugar refinery. Roberts was injured while working at the refinery when a pipe fell and crushed his hand. He filed the present suit against Amstar, alleging negligence and strict liability.
The Louisiana worker's compensation statute provides that when any business, defined in the statute as a principal, hires a contractor to perform work which is a part of the principal's trade, business or occupation, the principal is liable for compensation due any injured employee of the contractor as if the employee were his own. La.R.S. 23:1061. Such a principal is commonly known as a statutory employer. As is the case with regular employers, worker's compensation is the exclusive remedy a contractor's injured employee has against a principal who is his statutory employer. La.R.S. 23:1032.
In a motion for summary judgment, Amstar claimed that it was Roberts' statutory employer, and therefore Roberts' exclusive remedy is for worker's compensation. The Trial Judge agreed with Amstar and dismissed Roberts' suit. Roberts appeals.
To affirm the Trial Court, we must find it undisputed that Amstar was Roberts' statutory employer. In Berry v. Holston Well Services, Inc., 488 So.2d 934 (La. 1986), rendered after the summary judgment in this case, the Louisiana Supreme Court set forth the analysis to be used in resolving questions of statutory employment. Berry culminated a recent trend toward restrictive application of the statutory employment doctrine. Recognizing that the doctrine, originally designed to provide secondary protection to an injured employee, had been transformed into one which granted immunity to principals regardless of whether they actually pay compensation, the Court articulated a three level test "in line with the purposes of sections 1032 and 1061."
Berry requires that we first consider the nature of the contract work Custom Structures agreed to perform for Amstar to determine whether the work was specialized or non-specialized. Specialized work is that which requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contractor's field. It is our understanding that this first determination under the Berry test is to be made upon a consideration of the contract work without reference to the trade, business, or occupation of the principal, Amstar. If it is determined that the contract work is "specialized per se", it cannot be a part of the principal's trade, business, or occupation, and the principal is not a statutory employer as a matter of law.
The only document before the Trial Court which sheds light on the nature of the contract work is the contract itself. It describes the work Custom Services performed for Amstar:
Contractor shall furnish labor, material and equipment to perform the following repairs: (See Sketch SKJDR 7-26-82)
1. Remove approximately 170 ft. 6" pipe and 130 ft. 4" pipe to be placed in *1148 Owner's hopperold insulation to be placed in Owners containers.
2. Install approximately 170 ft. of Sched. 40 8" pipe and 130 ft. of Sched. 40 2" galvanized pipe.
3. Tie-ins to be performed on non-operating days.
We do not believe that the skill, training, experience, education and equipment required for the contract work is normally possessed by persons outside the field of pipefitting. Hence, the contract called for specialty work, and the Trial Court erred in holding that Amstar was Roberts' statutory employer.
This conclusion is buttressed by the result which would be reached upon a consideration of the second level of the Berry analysis which compares the contract work, in this case pipefitting, with the principal's business, trade or occupation, here refining of sugar, to see whether the contract work can be considered a part of the principal's trade, business or occupation. In comparing the two, three factual inquires established by the case law are helpful in determining the issue.
(1) Is the contract work routine and customary; regular and predictable?
(2) Does the principal have equipment and/or manpower capable of performing the contract work?
(3) What is the practice of the industry relative to the contract work?
According to Amstar's Services Superintendent, whose deposition was filed in connection with the summary judgment motion, Custom Services' pipefitters were replacing water lines which had been in place in the refinery since 1949hardly a project that can be characterized as general maintenance or regular or routine repair. Although the record indicates that Amstar has the equipment and manpower to perform the contract work, the superintendent also testified that he believed Amstar normally contracted out such jobs of a "lengthy" nature. There is nothing in the record to show the practice of the industry. Hence, it is clear that even if Amstar was not excluded by law from being considered a statutory employer, the facts indicate that under the second level of the Berry test Amstar cannot be deemed a statutory employer.
Our conclusion is also supported by the third level of the Berry test which inquires whether the principal was engaged in the contract work at the time of the alleged accident. We find that Amstar was not engaged in that work at the time of Roberts' injury. As explained by the Amstar superintendent in his deposition, Amstar hired Custom Services pipefitters rather than using its own employees to replace the water line because Amstar could not "afford to tie up [its] people ... when there's a refinery to keep operating." Amstar's utilization of Custom Services appears similar to Exxon's use of a contractor in Lewis v. Exxon Corp., 441 So.2d 192 (La.1983), which is discussed in Berry as a "non-specialty" case, that is, one where the nature of the contract work precluded a finding that the principal was not a statutory employer as a matter of law. In that case an Exxon division manager had testified that Exxon employees could not have maintained the normal operations of the plant while performing the work which was contracted out. The Supreme Court held, on rehearing, that Exxon was not the statutory employer of the contractor's injured employee. It was apparent in Lewis, as in the case before us, that "the magnitude of the contract work exceeded what could reasonably be classified as [the principal's] trade, business or occupation." Berry, at 939.
For the foregoing reasons, we hold that Amstar was not entitled to a summary judgment which declared it protected by the exclusive remedy provisions of the worker's compensation statute. We therefore reverse the dismissal of Eddie Roberts' tort suit and remand for further proceedings in the Trial Court. All costs to be paid by Amstar Corporation.
REVERSED AND REMANDED.