Perry SEENEY, et ux., and Calvin Demeritt, et ux., Plaintiffs-Appellants,

v.

**CITGO PETROLEUM CORPORATION,**
**Defendant-Appellee.**

No. 87–4472.

United States Court of Appeals,
Fifth Circuit.

July 8, 1988.

J.B. Jones, Jr., Jennifer Bercier, Michael H. Bercier, Cameron, La., Tommy C. Rutledge, DeQuincy, La., for plaintiffs-appellants.

Frederick Cappell, Lake Charles, La., for intervenor.

Gregory P. Massey, William R. Tete, Lake Charles, La., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY, Circuit Judge and HUNTER[*], District Judge.

CLARK, Chief Judge:

Perry Seeney and Calvin Demeritt appeal the trial court's judgment notwithstanding the verdict that Citgo is immune from tort liability to them under Louisiana's statutory employer defense, La.Rev.Stat.Ann. § 23:1061. Finding that the work Seeney and Demeritt performed was non-specialized, was a part of Citgo's trade, business or occupation, and was being performed by Citgo at the time of their injuries, we affirm.

### I.

Perry Seeney and Calvin Demeritt filed separate suits in negligence and strict liability against Citgo Petroleum Co., Cities Service Co. and Cities Service Pipeline Co. (collectively Citgo) for injuries they sustained in an explosion at Citgo's refinery at Lake Charles, Louisiana. They were employees of Payne & Keller Co. which had contracted with Citgo to perform turnaround maintenance work at Citgo's Lurgi unit. Citgo filed for summary judgment claiming that it was immune from tort liability under Louisiana's statutory employer defense. La.Rev.Stat.Ann. § 23:1061 (West 1985). The district court granted summary judgment for Citgo. Seeney and Demeritt appealed. A Fifth Circuit panel vacated and remanded holding that genuine issues of material fact remained regarding what type of work was covered by Payne & Keller's contract with Citgo and whether Citgo customarily used its own workers to perform turnaround maintenance. *See, Demeritt v. Citgo Petroleum Corp.*, 769 F.2d 1081 (5th Cir.1985).

A five-day trial on the merits was held. The jury found in favor of Seeney and Demeritt. Citgo timely filed for a judgment notwithstanding the verdict (JNOV). The district court granted JNOV concluding that reasonable jurors could not have found that Citgo was not Seeney and Demeritt's statutory employer. Seeney and Demeritt appeal. We affirm.

### II.

A JNOV is proper if, in light of all of the evidence viewed most favorably to the party opposing the motion, the inferences point so strongly to a verdict in favor of the moving party that reasonable jurors could not have reached a contrary conclusion. *Neely v. Delta Brick & Tile Co., Inc.*, 817 F.2d 1224, 1225 (5th Cir.1987); *Gates v. Shell Oil*, 812 F.2d 1509, 1512 (5th Cir.1987); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). The district court correctly concluded that the evidence and inferences established that Citgo was Seeney and Demeritt's statutory employer.

The Louisiana Supreme Court has recently clarified the test for the statutory

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

employer defense. In *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1984), the court stated that a principal may assert the statutory employer defense against a subcontractor's employee if "[the contract work] is, *in that business,* normally carried on through employees rather than independent contractors." 488 So.2d at 938 (*citing,* 1A. Larson, *Workmen's Compensation for Occupational Injuries and Death,* § 49.13 (Desk ed. 1985)). Work normally carried on through employees is work which is: 1) non-specialized, 2) a part of the principal's trade, occupation or business, and, 3) being carried on by the principal at the time of the injury. *Berry,* 488 So.2d at 937. If the principal establishes these factors, the contractor's employee's exclusive remedy for injuries sustained in the course of employment is workman's compensation. La.Rev.Stat.Ann. § 23:1032 (West 1985).

We first consider whether Citgo hired Payne & Keller to perform non-specialized work. Work is specialized if it requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside of the contract field. *Berry,* 488 So.2d at 938.

The work which Citgo hired Payne & Keller to perform was turnaround maintenance on the Lurgi unit. Citgo's former manager of the turnaround maintenance department testified that turnaround involved shutting down the unit, cleaning it out, and repairing or replacing parts if necessary. Citgo's maintenance superintendent of administration testified that the skills necessary to perform turnaround were basically the ability to handle material and break or unscrew nuts and bolts. Demeritt testified that Payne & Keller had sent them to replace valves on the Lurgi unit. This involved loosening the bolts with a wrench, taking the valves out, checking the valves to see if they were good, reinstalling them if they were and replacing them with working valves if they were not. He stated that although both he and Seeney were pipefitters, any strong person with mechanical ability could perform this work. The foreman of the Lurgi turnaround testified that Citgo didn't require that the pipefitters hired to perform

turnaround to be certified pipefitters because turnaround didn't involve special pipefitting skills. Mainly it involved hard, repetitive work. Based on this evidence, the trial court correctly concluded that Seeney and Demeritt were performing non-specialized work.

However, Seeney and Demeritt contend that pipefitting is specialized per se. If a contractor's work is specialized per se, it is not a part of the principal's trade as a matter of law. *Berry,* 488 So.2d at 938. Seeney and Demeritt cite *Roberts v. Amstar Corp.,* 496 So.2d 1146 (La.App. 4th Cir.1986) in which the court held that pipefitting work was specialized because it required a degree of skill not normally possessed by those outside of the pipefitting field. The court in *Roberts* reached its conclusion based solely on the contract and did not consider extrinsic evidence regarding what tasks the pipefitters were actually required to perform. *Roberts,* 496 So.2d at 1147.

*Roberts* does not compel a conclusion that pipefitting is specialized per se. On matters of state law, a district court sitting in diversity is bound by the decisions of the state's highest court. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). A decision by an intermediate state court is relevant datum for ascertaining state law which is not to be disregarded by the federal court unless other data convinces the court that the state's highest court would reach a contrary conclusion. *Id.; Wood v. Armco, Inc.,* 814 F.2d 211, 213 n. 5 (5th Cir.1987).

We are persuaded that the Louisiana Supreme Court would rule that pipefitting is not specialized per se. *Berry* and other Louisiana Supreme Court decisions have emphasized that the principal's entitlement to the statutory employer defense must be determined on the facts of each case. *Berry,* 488 So.2d at 938; *Rowe v. Northwestern National Ins. Co.,* 471 So.2d 226, 228 (La.1985); *Lewis v. Exxon Corp.,* 441 So.2d 192, 196 (La.1983). Under many contracts, a pipefitter may be called upon to perform work involving a degree of skill not possessed by those outside the pipefitting field. This could have been true in *Roberts*

although the court did not look beyond the contract to determine whether the contractor was actually performing specialized pipefitting work. However, it is clear that Seeney and Demeritt were not engaged in work which involved skills unique to pipefitters. Because *Berry, Rowe* and *Lewis* emphasize the factual nature of the statutory employer defense, *Robert's* holding that the pipefitting work there was specialized per se is not controlling here.

 Next, the district court concluded that overwhelming evidence suggested that turnaround was a part of Citgo's trade, occupation or business. The district court followed the guidelines in *Berry* for determining whether the work was part of Citgo's trade. Namely, it asked:

 (a) Is turnaround work routine and customary; regular and predictable?

 (b) Does Citgo have the equipment and/or manpower necessary to perform turnaround?

 (c) What is the practice in the industry relative to turnaround work?

*Berry,* 488 So.2d at 938.

 The court in *Berry* further stated that: "Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of the coverage."

*Berry,* 488 So.2d at 938.

 The evidence strongly suggested that turnaround was ordinary, routine maintenance work for Citgo. Citgo's former manager of turnaround maintenance testified that Citgo had a five year maintenance/turnaround schedule on all of its units. Each unit underwent turnaround on a periodic and predictable basis. The Lurgi unit underwent turnaround approximately every other year.

 Second, the evidence strongly indicated that Citgo had the equipment and manpower needed to perform turnaround. Citgo's contract with Payne & Keller required Citgo to supply all of the materials and the bulk of the equipment needed on the Lurgi project. Citgo employed a full time maintenance staff of 500 men for turnaround and other projects. It regularly hired up to 150 temporary employees to perform turnarounds. Citgo regularly performed about half of its own turnaround work. The decision to hire Payne & Keller for the Lurgi turnaround was an economic one. Two-hundred maintenance employees had been temporarily diverted to a vacuum burnout at another unit. Had the emergency not occurred, Citgo would have had the equipment and manpower to perform the Lurgi turnaround itself.

 Third, the district court evaluated the industry practice relative to turnaround work. Testimony indicated that there was no clear industry practice. Some firms regularly contracted out their turnaround work while some performed most of their turnarounds in-house. The industry practice varied depending on the philosophy of the individual refinery. The lack of a definite industry custom does not control the outcome of this case. As the court noted in *Berry,* work which may be contracted out by a small firm may be regularly performed in-house by an industry giant. *Berry,* 488 So.2d at 938. It further stated that to determine if a company is entitled to the statutory employer defense, the court must "tak[e] into consideration the size, complexity, integration (either horizontal or vertical), or lack thereof, etc. of the principal." *Id.* In light of the trial court's finding that Citgo ranked eighth in the nation in refining capacity and performed half of its own turnarounds, the court correctly held that turnaround was part of Citgo's trade despite the indefinite evidence on industry custom.

 In ruling that Citgo customarily performed turnaround maintenance, we emphasize that the test for customary work is factual, not strictly numeric. The Louisiana Supreme Court has never held that customary work is work which is performed more often than not by the principal. *See, Rowe v. Northwestern National Ins. Co.,* 471 So.2d 226, 228 (La.1985); *Lewis v. Exxon Corp.,* 441 So.2d 192, 196 (La. 1983). Rather, the test is that if some of the principal's employees are capable of performing the contractor's work, and regularly engage in that kind of work, then

the work can be considered a part of the principal's trade, occupation or business. *See e.g., Zuccarello v. Exxon Corp.,* 756 F.2d 402, 409 (5th Cir.1985); *Hodges v. Exxon Corp.,* 727 F.2d 450, 453 (5th Cir. 1984); *Chavers v. Exxon Corp.,* 716 F.2d 315, 317 (5th Cir.1983).

Last, *Berry* requires that the principal have been engaged in the contractor's work at the time of the accident. This requirement does not mean that the principal's employees must have been working side-by-side with the contractor's employees on the day of the injury. Rather, the principal's employees must have been performing the contract work somewhere on the premises at the time of the accident. *Hodges, supra,* 727 F.2d at 455 (5th Cir. 1984) (*citing, Forno v. Gulf Oil Corp.,* 699 F.2d 795 (5th Cir.1983)). Testimony revealed that Citgo employees were performing turnaround work at other Citgo units at the time Seeney and Demeritt were injured.

### III.

For the foregoing reasons, the verdict of the trial court is

AFFIRMED.