**Joe C. MOZEKE and Lizzie B. Mozeke, Plaintiffs-Appellants,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant–Appellee.**

No. 88–4138
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1988.

Robert L. Beck, Jr., Rivers & Beck, Alexandria, La., for plaintiffs-appellants.

Herschel E. Richard, Jr., Timothy B. Burnham, Cook, Yancey, King & Galloway, Shreveport, La., for defendant-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

KING, Circuit Judge:

Plaintiffs-appellants Joe and Lizzie Mozeke filed a negligence suit in Louisiana state court in August of 1986 against defendant-appellee International Paper Company to recover damages for injuries plaintiff Joe Mozeke sustained while working at defendant's Mansfield, Louisiana plant. On defendant's petition, the action was removed on the basis of diversity of citizenship to the Federal District Court for the Western District of Louisiana. Defendant then filed a motion for summary judgment, asserting that it was immune from tort liability under Louisiana's "statutory employer" doctrine. Plaintiff filed a cross-motion for partial summary judgment on the same issue. The district court granted defendant's motion. We conclude that the district court was correct in holding that the contract work that plaintiff was performing at the time of his injury was part of defendant's "trade, business or occupation" so that plaintiff's exclusive remedy is Worker's Compensation. Specifically, we agree with the district court that it was appropriate in this case to determine the scope of defendant's trade, business or occupation with reference to its operations as a whole, rather than looking only at the Mansfield plant. We therefore affirm the district court's judgment.

I.

The underlying facts in this case are essentially undisputed. Mr. Mozeke, an employee of Brown & Root ("B & R"), was injured in October of 1985 while working as a helper first class at the International Paper Company ("IPCO") mill at Mansfield, Louisiana.

The accident occurred while Mr. Mozeke was assisting two other B & R employees in setting up a scaffold inside of a digester—a large container used to "cook" wood chips to create pulp for the paper manufacturing process. The scaffold is constructed so that workers can move up and down inside of the digester to clean and make repairs. A piece of "scale" fell from the digester, striking Mr. Mozeke on the head and shoulder.

IPCO retained B & R to perform maintenance work on equipment at its Mansfield plant. While IPCO employees performed similar tasks, including the cleaning and inspection of digesters, at IPCO's other plants, they did not perform maintenance work at the Mansfield plant. IPCO did, however, provide B & R with the tools and equipment necessary to carry out the maintenance work at the Mansfield mill.

The parties filed cross motions for summary judgment on the issue whether IPCO was Mozeke's statutory employer under Louisiana Revised Statutes, section 23:1061. La.Rev.Stat.Ann. sec. 23:1061 (West 1985 & Supp.1988).

Section 1061 provides that any person (the principal) who contracts with another (the contractor) to perform work that is

part of the principal's trade, business or occupation will be liable under the Worker's Compensation statute to the contractor's employees as if the principal were the direct employer of the injured employee. *Id.* A principal may assert as a defense to a tort action that it is a "statutory employer" under section 1061. If the principal is found to be the plaintiff's statutory employer, the plaintiff's exclusive remedy is Worker's Compensation, and the principal is therefore immune from tort liability. La.Rev.Stat.Ann. sec. 23:1032 (West 1985 & Supp.1988) (exclusivity of Worker's Compensation); *Seeney v. Citgo Petroleum Corp.*, 848 F.2d 664, 666 (5th Cir.1988); *Forno v. Gulf Oil Corp.*, 699 F.2d 795, 796 (5th Cir.1983).

The district court granted summary judgment for IPCO, holding that IPCO was, as a matter of law, Mozeke's statutory employer. Applying the three-part analysis set forth in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), the trial court concluded (1) that the contract work performed by B & R was not specialized per se, (2) that the work at issue was part of IPCO's trade, business or occupation because the work was routine and customary, IPCO had the personnel and equipment to perform the work itself, and it was common within the industry for manufacturers to perform such work in-house, rather than contracting with an outside business, and (3) that IPCO itself was engaged in the contract work at the time of the injury.

Mozeke filed timely notice of appeal from the district court's entry of summary judgment for IPCO. Mozeke argues that the trial court erred in its application of the *Berry* standard, and that under proper application of the standard, he is entitled to summary judgment in his favor. Alternatively, Mozeke argues that summary judgment is inappropriate because there are genuine issues of material fact that must be resolved by the trial court. We will begin our consideration of these arguments by setting forth the standards under which we will review the district court's judgment.

II.

On appeal from a summary judgment, we must review the district court's decision by examining the record under the same standard that governs a district court's initial determination under Fed.R.Civ.P. 56(c). *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). We may therefore affirm a summary judgment only if "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Walker*, 853 F.2d at 358; *Reid*, 784 F.2d at 1364.

Deciding whether summary judgment is appropriate is a "threshold inquiry" to determine whether a trial is necessary: "[W]hether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In reviewing the facts, we must draw all inferences in the manner most favorable to the nonmoving party. *Reid*, 784 F.2d at 578. If we then conclude that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," summary judgment will not lie. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

While it is not our function at the summary judgment stage to resolve disputed issues of fact, *id.* at 249, 106 S.Ct. at 2510–11, we will subject the legal questions raised by the parties to full appellate review if the disposition on summary judgment turns solely on questions of law. *Brooks*, 832 F.2d at 1364. Since this case was removed to a federal forum on the basis of diversity of citizenship, we sit as an *Erie* court, and must apply Louisiana law, attempting to rule as a Louisiana court would if presented with the same issues. *Walker*, 853 F.2d at 358–59.

■ In this case, the district court held that as a matter of Louisiana law, IPCO was Mozeke's statutory employer. Applying the standard of review outlined above, we conclude that the district court was correct.

The primary purpose of the statutory employment doctrine, codified in section 1061, is to determine whether the contractor is "an independent business enterprise, rather than a mere intermediary interposed" to limit the principal's responsibility for Worker's Compensation. *Berry*, 488 So.2d at 938 (citing *Williams v. Shell Oil*, 677 F.2d 506, 508 (5th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982)). *Berry* is the controlling Louisiana case for determining when the statutory employer defense will apply in a tort action. *Seeney*, 848 F.2d at 666.

*Berry* sets forth a three-level analysis to determine whether a principal is the statutory employer of a contractor's employees: First, the court must determine whether the contract work is specialized or nonspecialized. This is a factual inquiry to determine whether the level of skill, training and experience required to perform the work at issue is not ordinarily possessed by workers outside the contract field. If the contract work is determined to be specialized per se, then, as a matter of law, it is not part of the principal's trade, business or occupation.

If the contract work is not specialized per se, the court must engage in a second inquiry: a comparison of the contract work with the principal's trade, business or occupation to determine whether the contract work could be considered a part of the principal's own trade or business. Finally, the court must determine whether the principal was itself engaged in the contract work at the time of the injury.

Applying the *Berry* test to the instant case, we hold that the district court correctly found that the contract work performed by B & R was not specialized per se. As the district court noted, *Berry* states that a "sub-species of the specialty inquiry" is whether the principal's own employees are capable of performing the contract work. 488 So.2d at 938. Since the skill, education and experience necessary to perform the contract work is possessed by personnel in the paper manufacturing business in general, and by IPCO's employees at other plants, we cannot reasonably conclude that the contract work was specialized per se.

Plaintiff urges a contrary conclusion, arguing first, that two of the classes of craftsmen employed by B & R—pipefitters and welders—are in fields that Louisiana appellate courts have previously held to be specialized per se.[1] As this court has noted, however, the specialty inquiry must be made on a factual, case by case basis. *Seeney*, 848 F.2d at 666. Moreover, in describing specialty cases, the Louisiana Supreme Court focused on the fact that the principal's own employees were not capable of performing the contract work. *Berry*, 488 So.2d at 939 (discussing *Rowe v. Northwestern Nat'l Ins. Co.*, 471 So.2d 226, 228 (La.1985) and *Benson v. Seagraves*, 436 So.2d 525 (La.1983)); *see also Recatto v. Bayou Steel Corp.*, 508 So.2d 877, 880–81 (La.App. 5th Cir.1987).

In *Recatto, supra*, the court emphasized that the plaintiff admitted that he possessed no "special trade skills" beyond those of the principal's own electricians. *Id.* at 880. Similarly, Dell Young, B & R's "Area Manager" for pulp and paper maintenance work, acknowledged in his deposition that the work B & R employees performed at the Mansfield plant was no dif-

---

1. To the extent that plaintiff relies on *Roberts v. Amstar Corp.*, 496 So.2d 1146 (La.App. 4th Cir. 1986) (pipefitting specialized per se), we note that the district court was correct in questioning *Roberts'* interpretation of the *Berry* test. We noted in *Seeney*, 848 F.2d at 666–67, that *Roberts* was inconsistent with decisions of the Louisiana Supreme Court emphasizing the importance of case by case evaluation of the specialty inquiry, and concluded that the Louisiana Supreme Court would not rule that pipefitting was specialized per se.

The district court properly distinguished another case on which plaintiff relies, *Miller v. Atlantic Richfield Co.*, 499 So.2d 1095 (La.App. 3d Cir.) (welding specialized per se), *writ denied*, 501 So.2d 198 (La.1986), on the grounds that the *Miller* court emphasized that ARCO employed no welders of its own.

ferent from that performed by IPCO's own employees at other plants.

Plaintiff argues finally, that B & R's work is specialized because the "maintenance field" involves the specialized task of assembling a large work force with the skills necessary to meet employers' needs. Louisiana courts have never recognized the "maintenance field," as it is characterized by plaintiff, as a specialty field. Indeed, the *Berry* court repeated the established rule in Louisiana law that general maintenance and repair work, such as B & R performed for IPCO, is *not* specialty work. 488 So.2d at 938.

Since the contract work is not specialized per se, the next inquiry under *Berry* is whether the contract work is nevertheless part of IPCO's trade, business or occupation. The overriding question is "whether the contract work is, *in that business,* normally carried on through employees rather than independent contractors." *Berry,* 488 So.2d at 938 (emphasis in original). The *Berry* court outlined three elements to assist in this determination: (1) is the contract work routine and customary? (2) does the principal have the equipment and/or manpower so that it is capable of performing the work itself? and (3) what is the practice in the industry relative to the contract work? *Id.*

As noted above, the *Berry* court reiterated the rule that "general maintenance and repair work, which by [its] very nature allow[s] the smooth and continued operation of the principal" is considered to be routine and customary. *Id.* The district court correctly found that the maintenance and repair work being performed by B & R at the time of the accident was regular and predictable and necessary for the smooth and continued operation of the plant. Mr. Young testified in his deposition that the cleaning and inspection of digesters was part of a routine maintenance program and occurred on a regularly scheduled basis. This assertion is further supported by the affidavits of IPCO personnel employed at the Mansfield plant and at three other IPCO mills. Even reading the evidence in the light most favorable to plaintiff, we can

find no evidence from which a reasonable jury could conclude that the work performed by B & R was not routine and customary.

The record similarly contains undisputed evidence that IPCO provided the equipment necessary for B & R to perform its maintenance and repair work at the Mansfield plant, and that IPCO personnel at the other Louisiana plants were capable of performing the same work that B & R employees performed at the Mansfield plant. IPCO employees did not, however, perform maintenance work at the Mansfield plant. Plaintiff's contention that the court should look only at the practice of the Mansfield plant, and not at IPCO's other operations, is addressed in detail below.

The evidence of industry practice is also clear. Mr. Young testified that only a very few paper manufacturers nationwide engage contractors to perform all of their routine maintenance and repair work. A few more manufacturers engage contractors to supplement their own work force for especially large or urgent maintenance tasks. The depositions and affidavits evidence, however, that in the paper manufacturing industry, maintenance work of the type performed by B & R is customarily performed in-house.

Plaintiff maintains nevertheless that there is a "trend" in the industry to engage contractors for this work. As the district court noted, the evidence of industry practice presented in the depositions (Mr. Young testified that B & R's contracts to perform "total maintenance" had increased from three to seven between 1983 and 1987) is hardly sufficient to constitute a "trend."

We hold that the district court was correct in its application of this prong of the *Berry* test: a reasonable jury could only conclude that the contract work is, in the paper manufacturing business, "normally carried on through employees rather than independent contractors." *Berry,* 488 So. 2d at 938.

The final inquiry under *Berry* is whether IPCO was itself engaged in the contract work at the time the accident occurred.

This last inquiry presents the only serious obstacle to finding that IPCO was Mozeke's statutory employer. The issue is not, however, one of material fact. Rather, it is a question of the proper interpretation of the legal standard which must be applied to a set of undisputed facts.[2]

Neither party disputes the evidence presented in depositions and affidavits that at IPCO plants other than the Mansfield plant, IPCO employees performed the same work that B & R employees performed at the Mansfield plant. The dispute arises because plaintiff argues that the court should look only to the situation at the Mansfield plant, and not to the activities of other IPCO plants.

In a case involving nearly identical facts, this court held that "[w]here work is customarily performed by the principal's own employees as an integral operation of its business, the circumstances that a particular one of its several plants chooses instead independent contractors to perform such maintenance work, without more, does not change the work's characterization as part of the principal's trade, business, or occupation." *Forno*, 699 F.2d at 797; *see also Hodges v. Exxon Corp.*, 727 F.2d 450, 454 (5th Cir.1984) (even if principal's employees had never performed turnaround work on the reactor where the accident occurred, summary judgment was appropriate because evidence was undisputed that principal's own employees did perform similar maintenance work on other reactors).

We are not free to reach a decision contrary to our holding in *Forno*, unless *Berry* demands a different result.[3] Plaintiff reads the last prong of the *Berry* test as requiring that the principal be engaged in the contract work at the particular plant in question. While the *Berry* court did abandon the "integral operation" test referred to in *Forno*, 488 So.2d at 937, we find no indication that the Louisiana court intended to require the parsing of a principal's enterprise in the fashion proposed by plaintiff.

*Berry* requires that a *particular principal* must itself be engaged in the contract work at the time of injury in order for the work to be considered part of the principal's trade, business or occupation.[4] The effect of the rule is to make the practice of an individual principal controlling over custom: "Although the contract work may customarily be considered part of a principal's trade, business or occupation, if at the time of the alleged injury the principal had no employees doing work similar to the contract work, then the contract work will not be considered part of the principal's trade, business or occupation as of the time

2. Plaintiff claims that there is a genuine issue of material fact on this point because it is not clear from the evidence whether IPCO retains any maintenance crew of its own at the Mansfield plant. Defendant, however, does not rest its argument on this point. Moreover, since we conclude that as a matter of law, it is appropriate to look at all of IPCO's operations, that issue is not material to this case.

3. In the only Fifth Circuit case to apply the *Berry* test, the court touched only briefly on this issue. *Seeney*, 848 F.2d at 668. The court held that the final prong of the *Berry* test did not require that the principal's employees must have been working side by side with the contractor's employees, but only that the principal's employees "must have been performing the contract work somewhere on the premises at the time of the accident." *Id.* We believe that the panel in *Seeney* intended only to respond to the factual context of that case—the principal's employees had temporarily been diverted from work on the unit where the accident occurred—and did not mean to impose a new requirement that the principal's employees must in all cases be performing the contract work on the same premis-es as the contractor's employees. Such a holding would be inconsistent with *Forno* and, as illustrated above, is not required by *Berry*.

4. *Berry* cites *Lewis v. Exxon Corp.*, 441 So.2d 192, 198 (La.1983) for this requirement. In *Lewis*, the court found that Exxon had made a deliberate decision to cease doing the type of construction work that was the subject of the contract. The court held that even though Exxon personnel were still capable of performing the contract work, the company could not rely on its past practices to assert that the contract work was part of its trade, business or occupation. 441 So.2d at 199.

If the Mansfield facility is treated as an independent entity for purposes of the *Berry* analysis, then the decision to engage a contractor at the Mansfield plant would be analogous to Exxon's decision to abandon the performance in-house of certain tasks. Thus, for purposes of section 1061, IPCO would not have been engaged in the enterprise at the time the injury occurred.

of injury." *Palmer v. Loyola Univ.*, 496 So.2d 421, 423 (La.App. 4th Cir.1986).

Thus, after *Berry*, a particular principal who elects to engage a contractor, cannot rely solely on the practices of others in the industry to support a statutory employer defense. It does not follow, however, from the reduced emphasis on industry practice, that a court should splinter the principal's business enterprise into discrete geographic units for purposes of this inquiry.

Ultimately, plaintiff's argument goes not to the *Berry* test, but to the definition of "principal" as it is used in section 1061. Since the Louisiana court has identified the activities of the "principal" as the focus of the inquiry, we must determine who the principal is in order to determine which activities are appropriately within the scope of the court's inquiry.[5]

In section 23:1032, "principal" is defined as "any person who undertakes to execute any work which is part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La.Rev.Stat.Ann. sec. 23:1032 (West 1985 & Supp.1988). Thus, the "principal" is in the first instance the "person" who executes a contract for the performance of the work at issue. It is only after defining the relevant entity that a court can determine whether the contract work is a part of that entity's trade, business or occupation.

The principal in this case is IPCO, not IPCO's Mansfield plant. IPCO, the New York corporation, contracted with B & R for the performance of "planned and emergency equipment maintenance, routine facilities maintenance, turnaround, miscellaneous construction and other related services at COMPANY'S Mansfield Mill located near Mansfield, Louisiana." Since IPCO, the corporation, is the "person" who executed the contract, it is the "principal" as

that term is defined by the statute. The plain language of *Berry* therefore requires that we look to the activities of IPCO as a whole to determine whether the contract work was part of its trade, business or occupation.[6]

Given the undisputed evidence that IPCO employees at other plants performed maintenance work identical to that performed by B & R's employees at the Mansfield plant, before, during, and after the time of Mr. Mozeke's injury, the district court properly held that IPCO met the last prong of the *Berry* test. The district court was therefore correct in its holding that as a matter of law, IPCO was Mr. Mozeke's statutory employer. Plaintiff's exclusive remedy is Worker's Compensation, and IPCO is therefore immune from tort liability.

### III.

For the foregoing reasons, we find that the district court was correct in granting summary judgment for IPCO. The judgment of the district court is AFFIRMED.

---

5. Certainly the Louisiana court *could* hold that the inquiry should focus on the principal's activities at a particular facility. Absent any clear indication that this result was intended, however, we must accept at face value the Louisiana Supreme Court's statement that a court should look to the activities of the "principal."

6. We do not express any opinion about the analysis that would be required if a large business enterprise separately incorporated its individual plants so that the contracting entity was a subsidiary of a larger parent corporation. That issue is not before this court.