United States Court of Appeals,

Fifth Circuit.

No. 92–3367

Summary Calendar.

Delays BROCK and Sharilyn Brock, Plaintiffs–Appellants,

v.

CHEVRON U.S.A., INC., et al., Defendants,

Chevron Chemical Company, Defendant–Appellee.

Nov. 10, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

On December 18, 1989, Delays Brock and Sharilyn Brock filed this action against Chevron Chemical Company for injuries sustained by Delays on August 28, 1989 at a Chevron plant located in Louisiana. Asserting that, under Louisiana law, Delays was a statutory employee of Chevron when he was injured and, therefore, that Chevron is immune from tort liability for Delays' injuries, Chevron moved for summary judgment. The district court granted that motion, and the Brocks appeal. Finding that Delays was Chevron's statutory employee pursuant to LA.REV.STAT.ANN. § 23:1061 (West 1985) (pre–1990 amendment version), we affirm.

I

The Brocks' claims arise from an accident in which Delays, while working inside a Chevron plant as a contract firewatcher[1] employed by J.E. Merit Constructors, Inc., slipped and fell in a pool of an oil lube product produced at the plant. The incident occurred while Delays was preparing an area for a welding operation to be performed by another contract company employed by Chevron.

The Brocks' case is before this court for the second time. Initially, Chevron moved for

---

[1]Firewatchers are responsible for ensuring that an area is safe for welders and others performing "hot work"—work involving combustible equipment.

summary judgment on the grounds that, under a 1990 amendment to section 1061 of Chapter 23 of the Louisiana Revised Statutes, Chevron was Delays' statutory employer and immune from tort liability for his injuries.  The district court agreed and granted summary judgment in favor of Chevron, but, finding that the 1990 amendment to section 1061—which became effective January 1, 1990—only applies prospectively, we reversed and remanded.  *See Brock v. Chevron Chemical Co.,* 946 F.2d 1544 (5th Cir.1991).  We did not determine whether Chevron is a statutory employer under section 1061 as it existed before January 1, 1990.

Upon remand, Chevron again moved for summary judgment, this time asserting that Chevron is a statutory employer under section 1061 as it existed *before* January 1, 1990 and that, as such, it is immune from tort liability for Delays' injuries.  Again, the district court agreed and entered a judgment dismissing the Brocks' action.  The Brocks appeal from that judgment.

## II

In considering the Brocks' appeal from the district court's grant of summary judgment in favor of Chevron, we review the record de novo.  *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* ——— U.S. ———, ——— S.Ct. ———, ——— L.Ed.2d ——— 1992 WL 130235 (1992); *International Shortstop, Inc. v. Rally's,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).  Our standard is well settled:  Summary judgment is proper if the party moving for such a judgment establishes that there is an absence of genuine issues of material fact.  *See* FED.R.CIV.P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986);  *Matsushita Elec. Ind. Col. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986).  Once a movant has made such a showing, the nonmovant must establish each of the challenged essential elements of its case for which it will bear the burden of proof at trial.  *See Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552;  *Topalian,* 954 F.2d at 1131.  Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence,[2] "[m]ere conclusory allegations are not competent summary

---

[2] *See* FED.R.CIV.P. 56(e);  *Rally's,* 939 F.2d at 1263.

judgment evidence, and they are therefore insufficient to defeat or support a m otion for summary judgment." *Topalian,* 954 F.2d at 1131 (citations omitted). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Where the nonmoving party fails to make such a showing and the moving party has met its summary judgment burden, the latter is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c).

## III

## A

As an *Erie* court, although we apply federal procedural rules including the federal summary judgment standard, we apply Louisiana's substantive law. *See Erie R. Co. v. Thompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *see also Salve Regina College v. Russell,* ⸺ U.S. ⸺, ⸺, 111 S.Ct. 1217, 1221–23, 113 L.Ed.2d 190 (1991) (under *Erie,* we review district court state law determinations de novo). The Louisiana law at issue—Louisiana's Workmen's Compensation Act as it existed on August 28, 1989—provides that: (1) the remedy offered under the Act is the *exclusive* remedy for employees who sustain injuries in the course of their employment, *see* LA.REV.STAT.ANN. § 23:1021, et seq.; (2) under the Act, employees are entitled to recover worker's compensation benefits from their employers, *see* LA.REV.STAT.ANN. § 23:1031; (3) employees are also entitled to recover worker's compensation from any entity deemed to be their "statutory employer," *see* LA.REV.STAT.ANN. § 23:1061;[3] (4) and, because a "principal" (for our purposes, a person or entity hiring workers through a contractual relationship) statutory employer is secondarily liable for worker's compensation benefits to an injured employee, such employers are given tort immunity for injuries sustained by their contract employees. *See* LA.REV.STAT.ANN. § 23:1032, subd. A(1)(a).

We determine statutory employer status under Louisiana law by applying a three-level test

---

[3]The pre–1990 version of section 1061 of Chapter 23 provides:

> When any person, in this Section referred to as the "principal", undertakes to execute any work ... for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay [such an] ... employee ... any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him....

formulated by the Louisiana Supreme Court in *Berry v. Holston Well Serv., Inc.,* 488 So.2d 934, 937–38 (La.1986). *First,* focusing on the scope of the contract work, our central question is whether the contract work is specialized or non-specialized—"whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field." *Id.* at 938. Specialized work is, as a matter of law, "not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees." *Id.*

*Second,* where the contract work is non-specialized, we compare the contract work with the principal's trade, business, or occupation. Our inquiry at this second level includes the following questions: (a) whether the contract work is "routine and customary," (b) whether the principal has the equipment and manpower capable of doing the same work, and (c) whether industry participants normally contract out this type of work. *Id.* "These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or lack thereof, of the principal." *Berry,* 488 So.2d at 938. *Third,* we inquire whether the principal was actually engaged in the contract work at the time of the contract employee's injury. *Id.* at 938–39.

B

Applying the *Berry* test, the district court found that: (1) "[b]ased upon the submissions of both parties," Delays was performing non-specialized work of an essentially maintenance nature;[4]

---

[4]The court held that:

> While certainly he had to be trained to do the work, i.e., taught what his job was and instructed in fire[-]fighting, the work he was performing was not specialized work. His duties consisted of covering drains, cleaning up oil spills, and standing by with fire[-]fighting equipment while hot work was being done. He was not performing technical work which required extensive and detailed education and/or training.

> The court focused upon the skeletal background requirements for firewatchers—the ability to read and write English, communicate with plant personnel, take and follow directions, fight fires, stay alert and react to changing conditions, endure heights and enclosed places, and lift 50 pounds. The court also acknowledged the minimal amount of training subsequent to being hired—watching a film illustrating working in confined spaces and the proper tagging procedures, instruction on the propensities of chemicals produced and

(2) the work performed by Delays was "routine, customary, regular and expected" in that "Chevron's safety policy required that firewatch hands prepare the area where hot work is to be performed by covering drains and cleaning up any spills"; Chevron supplied the equipment used by its firewatchers; and "firewatch hands are essential to and part of Chevron's trade, business and occupation"; and (3) the fact that Delays was actually working in conjunction with another Chevron contract company—he was preparing an area for hot work to be done by that company—when he slipped and fell suggests that Chevron was engaged in Delays' work at the time of his injury.

Chevron has established that, under the *Berry* test, the Brocks have presented no claims capable of succeeding on their merits and, therefore, that the Brocks have failed to raise any genuine issues of material fact worthy of trial. *See supra* Part II. To survive Chevron's motion for summary judgment, the burden is upon Chevron to establish each of the challenged essential elements of its case for which it would bear the burden of proof at trial. *See Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Topalian,* 954 F.2d at 1131. To accomplish this, the Brocks rely heavily upon the deposition testimony of Jimmy Lalonde, senior supervisor of Merit—the company which directly employed Delays and supplied firewatchers and general laborers to Chevron and other companies working at Chevron's Louisiana plant. Specifically, to satisfy the *Berry* test on a prima facie basis, the Brocks rely upon Lalonde's testimony that: (1) at the time of Delays' accident, firewatchers received training beyond that given to normal laborers, which, according to the Brocks, suggests that their work is specialized; (2) because one company, Merit, supplied firewatchers for all contractors and companies working at the Chevron plant at the time of Delays' accident (and this suggests that the industry customarily contracted out this type of work), firewatch work is not part of the trade, business, or occupation of Chevron, and (3) Chevron employees were not performing firewatch work at the time of Delays' accident.

1

stored at the Chevron plant, general orientation to the plant, instruction to look for spilled oil and grease, and training on proper handling of fire-fighting equipment. The total training time lasts approximately one-half of a day, and the only other requirement is that firewatchers attend a monthly fire-fighting training session with Chevron employees.

We find that the Brocks' reliance on Lalonde's testimony to establish that firewatch work is specialized is misplaced. Although Lalonde testified that Merit firewatchers receive one-half of a day more training than Merit general laborers, Lalonde also testified that this one-half day of extra training is also given to Chevron's direct employees working at the plant:

Q. Let me ask you this: Fire watchers receive training above and beyond the training that your other employees receive; is that correct?

A. Not necessarily. We have some ... people that have been through fire training classes, also, *and all Chevron employees go through fire training classes.*

Q. Am I correct that fire watchers receive training different or above and beyond those that just are general laborers with your company?

A. Eventually everyone is going to be going through the fire training classes.

Applying the *Berry* test, we and the Louisiana state appeals courts have held that welders, pipefitters, electricians, painters, and sandblasters are not specialized employees if (1) the contract work they perform consists primarily of manual labor or (2) the principal's own employees are capable of performing the same work.[5] Because the record establishes that (1) no particular education or expertise is required to perform firewatch work, (2) firewatch work does not require a degree of skill, training, education or equipment not normally possessed outside the contract field, and (3) a comparison between Merit's firewatchers and Chevron's maintenance workers reveals that Chevron's

---

[5]*See, e.g., Saaverda v. Murphy Oil U.S.A., Inc.,* 930 F.2d 1104, 1108 (5th Cir.1991) (affirming summary judgment for oil refinery where plaintiff, employed by a contractor performing maintenance work, was performing preparatory work for the installation of cement columns); *Mozeke v. International Paper Co.,* 856 F.2d 722, 725–26 (5th Cir.1988) (affirming summary judgment dismissing contract employee's suit against owner of paper mill where plaintiff and his employer contracted to perform maintenance work on plant equipment); *Seeney v. Citgo Petroleum Corp.,* 848 F.2d 664, 666 (5th Cir.1988) (upholding district court's dismissal of contract pipefitter's claims against owner of petroleum refinery on grounds that pipefitting duties involve operations that can be performed by "any strong person with mechanical ability"); *Boudreaux v. Freeport Chemical Co.,* 576 So.2d 615, 620 (La.App. 4th Cir.1991) (considering the entire scope of the contract work and, even though plaintiff narrowly focused on pipefitting and welding, affirming trial court's summary judgment holding that plaintiff was not a specialized worker); *Manuel v. Odeco, Inc.,* 563 So.2d 1179, 1181–82 (La.App. 1st Cir.1990) (using acetylene torch to cut metal into small pieces is "an easily learned task which require[s] no special skill, training, experience or education" and constitutes non-specialized work), *writ denied,* 566 So.2d 401–02 (1990); *Singleton v. Marine Shale Processors,* 560 So.2d 496, 497–98 (La.App. 1st Cir.1990) (where plaintiff was employed by contractor to clean oxidator unit, upholding summary judgment for facility owner); *Lewis v. Modular Quarters,* 508 So.2d 975, 980 (La.App. 3d Cir.1987) (sandblasting and painting require no particular skill or experience and are non-specialized work).

employees possess similar or greater skill, training, experience, education and equipment for performing firewatch work,[6] we find that the Brocks have failed to establish that a genuine issue of material fact exists as to whether firewatch work is specialized.

2

Because firewatching is non-specialized work, we must consider the Brocks' assertion that firewatch work is not part of the trade, business, and occupation of Chevron. We find that, although Chevron may contract for firewatch work, firewatch work is part of Chevron's trade, business, and occupation.

It is undisputed that Chevron supplied all the equipment used by Delays and the other firewatchers. In *Mozeke,* 856 F.2d at 726, we found that contract work was part of the principal's business where the principal "provided the equipment necessary for [the contractor] to perform its maintenance and repair work at the ... plant, and that [the principal's] personnel at other Louisiana plants were capable of performing the same work..." Moreover, the record establishes that firewatch work is regular, predictable, and necessary for the safe operation of the Chevron plant, *see Garrene v. BASF Wyandotte Corp.,* 532 So.2d 510, 512 (La.App. 1st Cir.1988) (plaintiff's maintenance activity is part of the routine and customary day-to-day operation of the plant), and that nearby chemical plants—namely British Petroleum and Murphy Oil Company—train their own people to perform firewatch work and do not contract for supplemental firewatch labor. Accordingly, we find that the Brocks have failed to successfully rebut the evidence presented by Chevron establishing that the firewatch work performed by Delays is within the scope of Chevron's trade, business, and occupation.

3

Having found that the firewatch work performed by Delays at the time of his injury was (1) non-specialized and (2) within the scope of Chevron's trade, business, and occupation, we reach the Brocks' final contention—that Chevron employees were not performing firewatch work at the time

---

[6]In fact, the affidavit of Paul Harrison, a maintenance superintendent employed by Chevron, states that Chevron employees perform firewatch duties as part of their routine maintenance operations.

of Delays' accident.

The third prong of the *Berry* test does not require that a principal's employees perform exactly the same work as the contract employees, *see Mozeke,* 856 F.2d at 727, 727 n. 3 (principal's employees need not be performing contract work on same premises as contractor's employees; similar work at other facilities may be sufficient), nor that the principal's employees be working side-by-side with the contract employees. *See id.; Seeney,* 848 F.2d at 668 (a showing that principal's employees were performing similar work somewhere on the premises at the time of the accident is sufficient).

The record firmly establishes that, at the time of Delays' accident, all Chevron maintenance workers were trained in fire prevention and fire-fighting; these skills were part of their job duties. Moreover, according to Chevron's maintenance superintendent (*see supra* note 6), Chevron employees routinely perform firewatch duties as part of their maintenance operations. To establish that Chevron was not engaged in any firewatch-related work at the time of Delays accident, the Brocks rely entirely upon Lalonde's testimony that he "cannot remember" firewatch work being performed by Chevron employees. We conclude that this is not enough to rebut Chevron's *Berry* showing that it was performing firewatch work—work that Chevron has established (1) its employees are trained to perform, (2) includes general fire prevention efforts, and (3) is essentially maintenance in nature (*see supra* Part III.B.1)—at the time of Delays' accident.[7]

## C

In sum, we have determined that Chevron has successfully established that, under the *Berry* test formulated by the Louisiana Supreme Court, Delays Brock was its statutory employee at the time of his accident. As recognized by the district court, this determination is supported by the fact that,

---

[7]The Brocks also argue that, at the time of Delays' accident, Delays was performing firewatch work for Kostmeyer—a welding contractor hired by Chevron—rather than directly for Chevron. The Brocks have not explicitly briefed why they raise this issue and how it weighs upon their claims. In response, we simply note that the record establishes that Chevron chose to hire many of its workers through contractual relationships and, inevitably, these Chevron workers did work together. For example, because Chevron coordinated and assigned work to a number of contractors, Merit often—at Chevron's direction—provided firewatch services to other contractors who also worked under Chevron's direction.

at the time he was initially employed by Merit, Delays signed an acknowledgment stating,

> I understand that although I am the general employee of the contractor noted below, I will also have a special employee relationship with Chevron Chemical Company during the performance of work at a Chevron Chemical Company Plant. I accept the special employee relationship and I understand that as a result of this relationship the responsibility, if any, of Chevron Chemical Company for injuries or death shall be limited, similar to that of my general employer, to benefits available under applicable worker's compensation law....
>
> I agree to abide by the safety rules applicable to plant employees and to follow the directions of representatives of Chevron Chemical Company in performance of work.

The Brocks have failed to successfully rebut Chevron's showing by "com[ing] forward with evidence establishing each of the challenged elements of its case for which [the Brocks would] bear the burden of proof at trial." *Topalian,* 954 F.2d at 1131, *citing Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. Accordingly, having reviewed the record as a whole, we find that, pursuant to LA.REV.STAT.ANN. § 23:1061 (West 1985) (pre–1990 amendment version), Delays was Chevron's statutory employee at the time of his accident. We therefore conclude that, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Chevron is, as a matter of law, entitled to summary judgment on the issue of tort liability arising from Delays' accident.

## IV

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Chevron.