366 So.2d 1318 (1978)
Joseph L. SMITH
v.
STATE of Louisiana, Through DEPARTMENT OF PUBLIC SAFETY.
No. 62182.
Supreme Court of Louisiana.
December 15, 1978.
Michael C. Barron, Baton Rouge, Special Counsel, Dept. of Public Safety, for defendant-respondent.
Charles W. Rea, Baton Rouge, amicus curiae in support of plaintiff-applicant.
Donald R. Wilson, Marksville, for plaintiff-applicant.
*1319 DENNIS, Justice.
The issue in this case is whether the five-year revocation of an habitual offender's driving privileges under the Motor Vehicle Habitual Offender Law, La.R.S. 32:1471-81, is absolute or subject to modification for good cause within the court's discretion.
Petitioner, Joseph L. Smith, was declared to be an habitual offender and ordered to surrender his driver's license. Shortly afterward, in a separate proceeding, Smith brought the instant suit to have his driving privileges restored. Following a hearing in which it was found that Smith's employment as an offshore diesel mechanic required him to respond at any hour to emergency calls, the district court restored limited driving privileges enabling Smith to fulfill his employment obligations. The Department of Public Safety appealed, and the court of appeal reversed. Smith v. Department of Public Safety, 358 So.2d 996 (La.App. 2d Cir. 1978). We granted writs to review the intermediate court's interpretation of the Motor Vehicle Habitual Offender Law as prohibiting a district court from restoring any driving privileges to an habitual offender prior to the lapse of the five-year revocation period.
A summary of the Motor Vehicle Habitual Offender Law was set forth in State v. Love, 312 So.2d 675 (La.App. 2d Cir. 1975) by the court of appeal:
"Adopted in 1972, the Motor Vehicle Habitual Offender Law defines an habitual offender as one who has accumulated within a five year period three or more convictions of certain listed offenses, or ten or more convictions of certain other traffic offenses. When any person has accumulated sufficient convictions to meet the definition of habitual offender under the Law, the Department of Public Safety must submit transcripts of the convictions to the District Attorney for the Judicial District in which the person resides, who then is directed to file a petition alleging that the person is an habitual offender. The court then is required to issue a show cause order against it is found that the person is the one who was convicted and that the requisite convictions are included, then the person is ordered to surrender his driver's license. He may not obtain a new license for five years or until a court authorizes it. An appeal may be taken from any final action or judgment entered under the Law in the same manner and form as appeals in civil actions. During the period his license is revoked and ordered surrendered, he is not entitled to drive a motor vehicle on the public highways and, if he does, he may be prosecuted and subjected to imprisonment for not less than one nor more than five years. The law provides also that if any person shall be convicted in Louisiana of an offense which would render him an habitual offender he shall, in addition to the penalty otherwise prescribed by law, be fined not less than $100 nor more than $1,000 and be imprisoned for not less than 30 days nor more than 12 months. R.S. 32:1471-81." Id. at 676.
The section of the law providing for the revocation of an habitual offender's driving privileges and the prerequisites for their restoration, La.R.S. 32:1479, stipulates as follows:
"No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state:
"(1) For a period of five years from the date of the order of the court finding such person to be an habitual offender; and
"(2) Until such time as financial responsibility requirements are met; and
"(3) Until upon petition, and for good cause shown, such court may, in its discretion, restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe, subject to other provisions of law relating to the issuance of operators' licenses."
*1320 The court of appeal concluded that the statute means that all three requisites must be met before an habitual offender may obtain a new license, viz., (1) the lapse of the five-year revocation period; (2) the fulfillment of financial responsibility requirements by the habitual offender; and (3) a court order, to be issued within judicial discretion upon a showing of good cause, restoring driving privileges upon such terms and conditions as the court may prescribe. The interpretation of the appeals court is a literal one, based primarily upon an exact reading of the conjunctive "and" joining the three subparagraphs, and adverting to nothing beyond the rules of grammar and the basic purpose of the statute to remove dangerous drivers from the highways.
In the construction of a civil statute, however, this Court has held that judges are not bound to a strict adherence "to the niceties of grammar rules," but that it is their duty to discover, if possible, the intent of the lawmakers and "the true meaning of the law." Edwards v. Daigle, 201 La. 622, 634, 10 So.2d 209, 212 (1942). In the same opinion this Court stated:
"* * * The Civil Code lays down the following rules for the `Construction of laws':
"`Art. 14. Usual Sense Gives Terms. The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.'
"`Art. 16. Context. Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning.'
"`Art. 18. Reason and Spirit. The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.'"
In determining whether the words of a law are "dubious," this Court has always followed the rule that it would not impute to a statute a meaning which would lead to an absurd result or extend a statute to a situation which the legislature never intended to be covered thereby. See, Emmons v. Agriculture Insurance Co., 245 La. 411, 158 So.2d 594 (1963), and cases cited therein.
The interpretation given the statute by the court of appeal would lead to unreasonable consequences which we cannot lay to the account of the legislature. Under the intermediate court's construction, even after expiration of the five year revocation, the restoration of any driving privileges to a financially responsible habitual offender would rest solely within the sound discretion of the district judge. Since there is no statutory guide for the exercise of the district judge's discretion, except for the requirement that the offender must show "good cause" for restoration, the judge would be forced to rely primarily upon his personal opinion in deciding whether the license should be restored and in formulating the terms and conditions of its reissuance. Accordingly, the district judge could, within his sound discretion, withhold a license, or impose stringent conditions upon its restoration, for an indefinite period of time after the expiration of the five-year revocation. Considering the number of judges in the state who would be called upon to make such decisions, the "good cause" burden probably would vary substantially among judicial districts and individual judges. Some judges might think that restoration should be virtually automatic for a financially responsible offender who has suffered a five-year revocation, whereas other jurists may as a general rule view a declaration of habitual offender status as warranting a much longer revocation of driving privileges. Without the formulation of additional rules by the four circuit courts of appeal, and ultimately by this Court, it would be difficult to say when a district judge had abused his discretion in granting or denying, or in imposing terms and conditions upon, the restoration of driving privileges of financially responsible offenders who had completed their five-year revocations.
*1321 We do not think that the legislature intended to delegate to the courts the task of formulating rules for the regulation and licensing of financially responsible habitual offenders after completion of their revocation periods. Nor, in our opinion, did the lawmakers intend for the relicensing decision to be made without reference to any standard other than each judge's notion of whether there is "good cause" to terminate revocation at the end of five years. We cannot attribute to the legislature the intention to commit such a vast area of legislative responsibility to the judiciary.
Accordingly, we conclude that an interpretation of the statute adhering strictly to the "niceties of grammar rules" leads to an absurd or unreasonable result making such a construction of the legislation dubious. Following the Civil Code rules for the construction of laws, therefore, we will seek the true meaning of the law by examining the context of the dubious wording and by considering the reason and spirit of the statute or the cause which induced its enactment.
From a reading of the statutory provisions as a whole it is evident that the lawmakers intended for an otherwise qualified financially responsible habitual offender to have the right to obtain a new license after the lapse of his five-year revocation period. The discretion granted courts to determine when good cause exists for a conditional restoration of driving privileges is restricted and may be exercised only during the revocation term. The statute requires the courts to play their customary role of providing limited relief in hardship cases, see, La.R.S. 32:415.1,[*] and does not commit to them a carte blanche for the drafting of a post-revocation policy for the issuance of drivers' licenses.
For the reasons assigned, the judgment of the court of appeal is reversed, and the case is remanded to the court of appeal for its further review to determine whether the district court acted within its discretion in finding that good cause exists for the limited restoration of Smith's driving privileges during his revocation period. All costs are assessed to the respondent.
REVERSED AND REMANDED.
SUMMERS, J., concurs.
DIXON, J., concurs with reasons.
DIXON, Justice (concurring).
I respectfully concur for the reason that the restoration by a court of the privilege of driving after a five year prohibition is not a judicial function, but a ministerial one.
NOTES
[*] See, La.C.C. art. 17: "Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."