DOMENGEAUX, Judge.
This case is before us again, this time by remand from the Louisiana Supreme Court. It revolves around an interpretation of the Motor Vehicle Habitual Offender Law, La. R.S. 32:1471 et seq.
Section 1471 sets forth the strong legislative policy underlying the law:
“It is hereby declared to be the policy of this state:
(1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and
(2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts, and the statutorily required acts of its administrative agencies; and
(3) To discourage repetition of criminal acts by individuals against the peace and dignity of this state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of the traffic laws.”
The prohibition section of the statute, 1479, reads as follows:
“No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state:
(1) For a period of five years from the date of the order of the court finding such person to be an habitual offender; and
(2) Until such time as financial responsibility requirements are met; and
(3) Until upon petition, and for good cause shown, such court may, in its discretion, restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe, subject to other provisions of law relating to the issuance of operators’ licenses.”
*1251 Joseph L. Smith was adjudicated an habitual offender by the above captioned District Court on September 8, 1977, and his driving privileges were revoked under the mandatory provisions of the statute. Four days later, on September 12, 1977, he petitioned the same Court for and, after a hearing, was granted restricted driving privileges in order to allow him to go to and from his place of employment. The Department of Public Safety appealed, and we reversed. 358 So.2d 996 (La.App. 3rd Cir. 1978). In that opinion we were firmly of the view that section 1479 was clear and unambiguous, and we stated:
“We think it can be inferred from the specific and express policy declaration, the mandatory judgment provision, and the stringent penalty for violations of the judgment that the legislature meant to prohibit habitual offenders from driving on public highways. In this stern statutory context, it seems incongruous that the legislature would dilute the potency of the law by allowing habitual offenders to drive, even for limited and well-intentioned purposes. Had this been the intent, the strict language dealing with mandatory judgment would be unnecessary.
In conclusion, we construe La.R.S. 32:1479 to mean that an habitual offender is prohibited from operating a motor vehicle on the highways of the state for five years from the order of the court finding him an habitual offender. After five years and upon meeting financial responsibility requirements, a person so adjudged may petition the court for the restoration of his privilege to operate a motor vehicle, and such restoration may be given, in the court’s discretion, for good cause shown, upon the terms and conditions prescribed by the court.”
The Supreme Court granted writs and reversed us. Smith v. State, Through the Department of Public Safety, 366 So.2d 1318 (La.1978). The high court disagreed with our interpretation of the statute, and concluded that an adjudged habitual offender could, for good cause, be granted limited restoration of driving privileges during the five year period following the date of the Order of the District Court finding such person to be an habitual offender.[1]
The Supreme Court’s interpretation of the statute departed from a strict application of the grammatical rule for sentences connected by the conjunction “and.” It is apparent that the high court opined that the legislative intent was to have the conjunction “or” connecting the numbered second and third paragraphs of La.R.S. 32:1479. It seems then, according to the Supreme Court’s pronunciamento, that an otherwise qualified and financially responsible habitual offender may obtain a new license if the five year revocation period has lapsed; “or” a conditional or restricted driving privilege within the five year period upon a showing of “good cause.”
The purpose of remanding the case to us is to determine whether the District Court acted within its discretion in finding that good cause exists for the limited restoration of Smith’s driving privileges during his five year revocation period. For the reasons shown hereinafter, we will remand this case to the District Court for further proceedings.
Mr. Smith is employed as an offshore diesel mechanic and normally works on a seven day shift. He resides in Marksville, Louisiana, and must commute a substantial *1252 distance to Houma, Louisiana. In addition to his regular shift, part of his work requires that he respond to emergency calls at any hour. We feel mandated to conclude, under the Supreme Court’s rationale, that if an habitual offender cannot obtain a restricted permit to drive at odd, irregular, or emergency hours so that he may earn a livelihood, there probably would be no situation when a restricted permit would be allowed. Accordingly, it is quite obvious that we have no alternative but to find that the trial court had “good cause” to grant a restricted privilege, limiting Smith’s driving allowances to those times when other means of transportation would be unavailable. But even under the liberal interpretation of the statute by the Supreme Court in favor of the offender, we find that the District Court’s limited allowance of driving privileges is too permissive and should be further restricted.
The District Court judgment goes beyond the granting of a restricted permit for emergency calls during odd and irregular hours when transportation cannot be planned ahead of time. The District Court judgment simply states that Smith can now operate a motor vehicle, but “only in connection with his employment.”
Smith testified that on his shift work, a car pool was attempted, but his fellow pool-ers objected to his only paying expenses but never participating in the driving. Consequently, he asked the District Court for, and was apparently granted, the right to commute alone in his truck each work week.
We think that, except for emergency calls, Mr. Smith should not be allowed to drive the long distance to work if there is other transportation available. The record is very incomplete with reference to alternative forms of transportation. It may be that other transportation, such as a public bus, might be available, which Smith could make advance plans to take. A further investigation of his present car pool arrangement should be made, and his fellow poolers should be called to testify in that regard. It also may be that Mr. Smith could make arrangements with his wife or friends and relatives, or whomsoever, to drive him to and from his regular work. Absent any of those possibilities, and any others which may be developed by the trial court, then, if Mr. Smith must participate in a car pool, and that it be necessary that he take his turn in driving, he might be allowed to use his vehicle only on those days when it is his week to drive.
As we view the strong legislative policy in mandating that habitual offenders be removed from the highways in the interest of the safety of all persons who travel or otherwise use our highways, any easy avenue for finding good cause to allow driving privileges to an habitual offender should be precluded.
Should it develop on remand that alternate means of transportation to and from work may result in more cost or inconvenience to Mr. Smith, that fact should by no means outweigh the right of maximum safety afforded to persons who travel or otherwise use our highways.
In accordance with the foregoing, this case is remanded to the District Court so that evidence might be obtained on the question of other available transportation to accommodate Mr. Smith’s weekly job trips. After this determination, the District Court’s judgment should be modified in order to reflect such findings, and in order to permit the habitual offender the use of his vehicle on emergency calls in connection with his employment, in accordance with the views expressed herein.
Any costs in connection with this remand to us by the Supreme Court are assessed against the Department of Public Safety. Costs on remand to the District Court to be assessed by it.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. We note that a paradoxical situation exists with reference to the revocation of driving privileges in Louisiana. La.R.S. 32:415.1 provides that a person whose driver’s license has been suspended, revoked, or cancelled for the first time only may secure restricted driving privileges in order to continue to support his family; however, if such a person suffers a second suspension, revocation, or cancellation, he is not entitled to restricted driving privileges. Perry v. State, Department of Public Safety, Driver's License Division, 353 So.2d 318 (La. App. 1st Cir. 1977), writ denied 354 So.2d 1385 (La.1978). If that same person goes further, and ultimately qualifies for, and is adjudged, an habitual offender under La.R.S. 32:1471 et seq., he may again be granted restricted driving privileges. We feel that this anomaly warrants the attention of the Louisiana Legislature.