397 So.2d 29 (1981)
Thomas A. BARRON, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY LICENSE CONTROL & DRIVER IMPROVEMENT DIVISION, Defendant-Appellant.
No. 14471.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
Rehearing Denied May 1, 1981.
Writ Denied June 22, 1981.
*30 Foye L. Lowe, Jr., Associate Gen. Counsel, Dept. of Safety, Baton Rouge, for defendant-appellant.
Rothell & Toups, Ltd., A Professional Law Corp. by David M. Cohn, Mansfield, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied May 1, 1981.
FRED W. JONES, Jr., Judge.
The State of Louisiana appeals a judgment granting to plaintiff Barron a restricted driver's license. We reverse.
In 1978 Barron was adjudged an habitual offender pursuant to the provisions of Louisiana R.S. 32:1471 et seq., and his driver's license was revoked. At that time La.R.S. 32:1479 read as follows:
"No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state:
"(1) For a period of five years from the date of the order of the court finding such person to be an habitual offender; and
"(2) Until such time as financial responsibility requirements are met; and
"(3) Until upon petition, and for good cause shown, such court may, in its discretion, restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe, subject to other provisions of law relating to the issuance of operators' licenses."
In Smith v. State, through Department of Public Safety, 366 So.2d 1318 (La.1978), the Louisiana Supreme Court held that an habitual offender could be granted limited driving privileges in hardship cases during the five year revocation period, construing the and in La.R.S. 32:1479(1) as or.
By Acts 220 and 347 of 1979, which became effective September 7, 1979, the Louisiana legislature amended La.R.S. 32:1479 to read:
"No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state until all of the following requirements have been complied with:
"(1) a period of five years has elapsed since the date of the order of the court finding such person to be an habitual offender; and

(2) financial responsibility requirements are met; and

(3) Upon petition, after the lapse of the five year period provided above, and for good cause shown, the court, in its discretion, determines that the license should be restored. In restoring to such person the privilege to operate a motor vehicle in this state, the court may prescribe such terms and conditions as it deems necessary to protect the best interests of the public, subject to other provisions of law relating to the issuance of operators' licenses." (Emphasis added)
Barron filed this suit for a restricted driver's license on May 27, 1980 and was *31 granted the relief prayed for by judgment of the district court.
The State contends that the trial judge erred in granting a restricted driver's license to Barron within the five year period following his being adjudged an habitual offender. It argues that the Smith case was legislatively overruled by the 1979 acts amending La.R.S. 32:1479; that these acts were interpretive in nature; and that their effect was simply to establish the meaning of this statute as of the date that Barron was adjudged an habitual offender.
On the other hand, Barron asserts that the 1979 amendments were not interpretive in nature and should not be given retroactive effect. Consequently, he contends that the holding in Smith governs his case, permitting him to be granted a restricted driver's license within five years from the date he was adjudged an habitual offender.
Addressing the subject of interpretive legislation, the Louisiana Supreme Court in Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974) pointed out:
"... genuine interpretive legislation is a recognized function of legislatures in systems of codified laws, being considered a correlative of the power to legislate. The legislature, after all, seems to be an appropriate agency to clarify the meaning of its own statements. 1 M. Planiol, Treatise on the Civil Law, §§ 208-11 at 155-56 (La.St.L.Inst. transl.1959); Yiannopoulos § 32.5.

. . . .
"Moreover, interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of law. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. 1 M. Planiol, Treatise on the Civil Law, § 251 at 179 (La. St. L. Inst. transl. 1959); Yiannopoulos § 32.5 at 18 (1975 Supp.)."
The court identified several factors preceding a legislative enactment which would indicate that the statute was intended to be interpretive, such as a recent construction of a statute by the supreme court not coinciding with legislative intent, or ambiguity in the original version of the statute.
In Smith our supreme court concluded that the statute under consideration contained "dubious wording" which in its opinion would lead to an "unreasonable result." However, the following year the legislature amended the statute to clearly show that its construction in Smith did not coincide with legislative intent. We conclude, therefore, that this is a classic example of interpretive legislation which did not create a new rule but simply established the meaning that the interpreted statute, La.R.S. 32:1479, had from the time of its enactment and, particularly, at the time that Barron was adjudged an habitual offender. We note that the same legal conclusion was reached in Wheeler v. State, 377 So.2d 539 (La.App. 3rd Cir. 1979), where the court was confronted with this identical issue.
For these reasons the judgment of the district court granting Barron a restricted driving license is reversed and it is ordered that his petition be dismissed, with costs at trial and on appeal assessed to plaintiff-appellee.