939 F.2d 1305
 Joann W. PIERCE, Plaintiff-Appellant,
Northbrook Property & Casualty Insurance Company, Intervenor-Appellant,
v.
HOBART CORPORATION, Defendant,
Martin Marietta Corporation a/k/a Martin Marietta Manned
Space Systems, Defendant-Appellee.
 No. 90-3640.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 3, 1991.
 
 Ford T. Hardy, Jr., New Orleans, La., for Pierce.
 Dona J. Dew, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Northbrook.
 W. Lee Kohler, Robert Emmett Kerrigan, Jr., David P. Gontar, Deutsch, Kerrigan & Stiles, New Orleans, La., for Martin Marietta.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, JOHNSON, and GARWOOD, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Joann W. Pierce appeals an adverse summary judgment dismissing her tort claim against Martin Marietta Corporation (MM) on the ground that the corporation is her statutory employer under pertinent Louisiana law. Concluding that there is a genuine issue of fact whether the contract work at issue was specialized or non-specialized we vacate and remand for further proceedings.
 
 Background
 
 2
 MM contracted with the National Aeronautics and Space Administration to provide certain services at the Michoud Space Assembly Facility owned by NASA. The services included cafeteria and related food services for the 4,000 employees at Michoud. MM subcontracted with Morrison's Management Services, Inc. to provide these particular services. Pierce was employed by Morrison's. She allegedly was injured on June 15 and July 6, 1988 while working at Michoud.
 
 
 3
 In May 1989 Pierce filed suit in state court alleging injury as a result of, inter alia, the negligence of MM. The case was removed to federal court. MM's motion to dismiss, later properly converted to a motion for summary judgment, claims that as its statutory employee, Pierce was barred by the Louisiana Worker's Compensation Act from asserting any ex delicto claim against MM for work-related injuries. Under Louisiana law compensation benefits are an employee's exclusive remedy against a statutory employer. La.R.S. 23:1032; La.R.S. 23:1061. Applying the test set forth by the Louisiana Supreme Court in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the district court found that MM was Pierce's statutory employer and, accordingly, dismissed her claim. Pierce timely appealed.
 
 Analysis
 
 4
 The issue on appeal is whether the trial court was correct in granting summary judgment in favor of MM on the ground that there was a statutory employment relationship between it and Pierce. Our standard of review requires that we decide whether, examining the record de novo and viewing the evidence and all reasonable inferences in the light most favorable to Pierce, MM has demonstrated that there was no genuine issue of material fact and was entitled to judgment as a matter of law. Mozeke v. International Paper Co., 856 F.2d 722 (5th Cir.1988).
 
 The Berry Standard
 
 5
 Berry was the culmination of years of jurisprudential development of the definition of statutory employer under La.R.S. 23:1061 by the Louisiana courts. Berry specifically abandoned an earlier "integral relation" test which had given a very liberal interpretation to statutory employer and, concomitantly, a very broad reach to the tort immunity accorded to principals for the work-related injuries suffered by employees of contractors and subcontractors. The Louisiana Supreme Court expressed this change as follows:
 
 
 6
 Initially, the courts of this state, including this Court, had determined that a contractor was performing a part of the principal's trade, business or occupation, and thus falling under the statute, when the contract work was an integral and/or essential part (or other synonyms) of the trade, business or occupation of the principal....
 
 
 7
 Beginning with the case of Benson [v. Seagraves, 436 So.2d 525 (La.1983) ] and followed by the cases of Lewis [v. Exxon Corp., 441 So.2d 192 (La.1983) ] and Rowe [v. Northwestern National Ins. Co., 471 So.2d 226 (La.1985) ] it is obvious that this Court has shifted its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine to one which is more restrictive. In so doing we have abandoned the "integral relation" test.... Although the shift is very clear, we have failed to succinctly set forth the method of analysis presently used by this Court in resolving the difficult question of statutory employment.
 
 
 8
 Berry, 488 So.2d at 937 (citations omitted).
 
 
 9
 The Berry court established a three-step analysis:
 
 
 10
 (1) Is the contract work specialized? If so then as a matter of law the contract work is not part of the principal's trade, business or occupation and the principal is not the statutory employer.
 
 
 11
 (2) If non-specialized, comparing the contract work with the principal's trade, business or occupation, can it be a part thereof in light of three inquiries:
 
 
 12
 i. is it routine and customary, i.e., regular and predictable;
 
 
 13
 ii. does the principal have the equipment and personnel capable of performing the work; and
 
 
 14
 iii. what is the practice in the industry?
 
 
 15
 (3) Was the principal engaged in the contract work at the time of the injury?
 
 
 16
 In 1989 the Louisiana Legislature amended R.S. 23:1061, effective January 1, 1990, by adding the following sentence. Acts 1989, No. 454 Sec. 3:
 
 
 17
 The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
 
 
 18
 This amendment broadens the reach of the statutory employer designation. The amendment tracks the language in the first two steps of the Berry analysis and rejects the determinative nature of those queries. "This does not, one supposes, mean that these factors are not to be considered; rather, it appears to mean that no single factor (such as specialized versus non-specialized work) may be used to defeat the defense of immunity raised by the principal." Johnson, Worker's Compensation, 50 La.L.Rev. 391, 397 (1989).Retroactive or Prospective?
 
 
 19
 Because Pierce was injured and filed suit before the effective date of the 1989 amendment to section 1061, we must determine whether the amendment is to be given retroactive effect. The Louisiana Supreme Court has not yet addressed the matter in a published opinion, nor have we found any case by an intermediate appellate court expressly resolving the issue in a majority opinion.[1] We do find, however, the repeated implicit treatment of the amendment as applying only prospectively; nearly all of Louisiana's courts of appeal have continued to apply the Berry test for injuries occurring before January 1, 1990.[2] Louisiana appellate courts are required to apply the law existing at the time of rendition of their decision, even if the law differs from that existing at the time of the trial court's judgment. Dripps v. Dripps, 366 So.2d 544 (La.1978). As the amended version of 1061 has been in effect since January 1, 1990, we safely may infer that these courts have concluded that the amendment is not retroactive.
 
 
 20
 We agree with the court a quo that the Berry rubric is applicable to Pierce's case and that the 1989 amendment to R.S. 23:1061 is not to be given retroactive effect. This conclusion is consistent with Article 6 of the Louisiana Civil Code which provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."[3] Article 6 envisions a two-part inquiry: (1) is the law substantive, procedural, or interpretive; and (2) is there a clear legislative expression as to its effective date?
 
 Classification of 1989 Amendment
 
 21
 Substantive laws either establish new rules, rights, and duties or change existing ones. Ardoin v. Hartford Accident & Indem. Co., 360 So.2d 1331 (La.1978); Cahn v. Cahn, 468 So.2d 1176 (La.1985). Interpretive laws, on the other hand, do "not create new rules, but merely establish[ ] the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties." Ardoin, 360 So.2d at 1339 (citations omitted); see also Barron v. State, 397 So.2d 29, 31 (La.App.), cert. denied, 401 So.2d 1188 (La.1981). The character of interpretive legislation is evident in a civil law system such as Louisiana. "Judicial opinions, although invaluable interpretations of the law, are merely that; interpretations of the legislative will. The supreme expression of legislative will in Louisiana is of course the codes and statutes." Winstead v. Ed's Live Catfish & Seafood, 554 So.2d 1237, 1242 (La.App.1989), cert. denied, 558 So.2d 570 (La.1990). Interpretive laws provide the Legislature with the opportunity to pronounce the "correct" interpretation to be given to existing laws.
 
 
 22
 The 1989 amendment to 1061 significantly changes the definition of the statutory employment relationship. It reverses years of limited judicial applications of the statutory employer defense and returns Louisiana to the more expansive integral relation test. As a result, the right of an employee of a subcontractor to sue a principal in tort for a work-related injury is dramatically curtailed by the statutory employer defense.[4]
 
 
 23
 We perceive no bright line between substantive laws which change existing standards and interpretive laws which change existing standards by redefining and returning to their ostensible "original" meaning. Cf. Dripps v. Dripps, 366 So.2d at 548 ("[T]he line between [an interpretive] intention of the lawmaker and the enactment of new provisions is tenuous...."); Sawyer v. Texaco Refining & Marketing, No. 89-2734, 1991 WL 28986, at 1 (quoting Dripps ); Eicke v. Eicke, 517 So.2d 1067, 1071 (La.App.1987) (same); see also Coates v. Owens-Corning Fiberglas Corp., 444 So.2d 788, 790 (La.App.1984) ("The distinction between substantive laws and procedural laws is not always clear.").
 
 
 24
 Comment (c) to Civil Code Article 6 cites two cases, Ardoin and Barron, as examples of interpretive legislation that should be applied retroactively. Barron reflects the situation where the Legislature amends a statute to provide its interpretation immediately following an "incorrect" interpretation by the Louisiana Supreme Court. In Barron the Second Circuit addressed whether Acts 220 and 347 of 1979 which amended La.R.S. 32:1479 were interpretive in nature. These amendments directly overruled the construction given to La.R.S. 32:1479(1) a year earlier by the Louisiana Supreme Court in Smith v. State, 366 So.2d 1318 (La.1978). The Barron court stated that if the Legislature acts soon after a legislative "construction of a statute by the supreme court not coinciding with legislative intent," then the enactment is interpretive. Barron, 397 So.2d at 31 (citing Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La.App.1974)). The Second Circuit concluded that the passage of Acts 220 and 347 to overrule Smith "is a classic example of interpretive legislation which did not create a new rule but simply established the meaning that the interpreted statute, La.R.S. 32:1479, had from the time of its enactment...." Barron, 397 So.2d at 31.
 
 
 25
 Ardoin presents a different interpretive law scenario, one in which the Legislature defines and makes explicit that which was implicit in a statute. In Ardoin the court addressed the retroactivity of Act 807 of 1975 which further defined the standard of care owed by physicians under C.C. art. 2315. That Act stated that the standard of care for general physicians is to be determined by localized definitions of negligence and the standard of care for specialists is to be determined by those within the involved medical specialty. The amendment did not alter a court-created doctrine for at that time there was no "authoritative judicial interpretation of Louisiana statutory law pertinent to a physician's duty toward his patient." Ardoin, 360 So.2d at 1339. Though the Act "changed" the existing law by expressly defining the standard of negligence, the Louisiana Supreme Court found that this type of change was interpretive of the prior law:
 
 
 26
 Insofar as the statute describes a standard of conduct, it merely determines more precisely the meaning of certain kinds of fault by certain classes of defendants, i.e., professional negligence, imprudence and want of skill by medical generalists and specialists, who were originally responsible for the damage occasioned by such fault under Articles 2315 and 2316. Accordingly, La.R.S. 9:2794 is an interpretive statute which does not establish new rights and duties but merely determines the meaning of existing laws....
 
 
 27
 Ardoin, 360 So.2d at 1339.
 
 
 28
 Aware of the force of the contrary argument, we nonetheless conclude that the 1989 Act is more than merely interpretive of the original 1914 Act establishing the worker's compensation system in Louisiana. It markedly changed the rights and obligations of parties as pronounced in Berry. It did so three years after Berry was decided. The amendment became effective on a specific date, January 1, 1990, several months after what would have been its effective date had the legislation otherwise been silent. Under the Louisiana Constitution, if an Act is not declared to be emergency legislation or does not contain an express effective date it becomes effective 60 days after the adjournment of the legislative session. La. Const. Art. 3 Sec. 19 (1974). Cf. Manuel v. Carolina Casualty Ins. Co., 136 So.2d 275, 281 (La.App.1961) ("Counsel for plaintiff has given us no satisfactory explanation as to why the Legislature would specifically provide that the Act was to become effective more than six months after its enactment, if the Legislature actually intended for it to be given retroactive effect."). The same observation may be made in the case at bar. Therefore, we conclude that Acts 1989, No. 454 is a substantive law which should be given prospective application only.
 
 Applying Berry
 
 29
 Finally, in our analysis we begin where we started, applying the Berry rubric to determine whether MM is Pierce's statutory employer. The essential and "central question to be answered is whether the contract work is specialized or non-specialized.... [C]ourts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field." Berry, 488 So.2d at 938. The primary focus for this inquiry is the entire scope of the contract work rather than the specific task performed by the individual employee. 488 So.2d at 937.
 
 
 30
 To demonstrate that the contract work was specialized, Pierce introduced the deposition testimony of four food service operations directors at other MM facilities who stated that such large-scale food service contract work requires workers with a degree of skill, training, education, and experience in the food-service operations business. This background is necessary for planning and cooking meals for a large number of people, purchasing and storing perishable foods, coordinating a large number of employees and numerous other tasks, many of which are complex and involved. One would expect these operations directors to reflect a modicum of bias in describing the sophistication inherent in their work. Nevertheless, we are compelled to conclude that this testimony raises a serious, material question of fact whether the contract work at issue is specialized. This disputed material fact makes summary judgment inappropriate.
 
 
 31
 In concluding that the contract work at issue was not specialized per se the district court relied, in its first rationale, on two cases, Hankins v. Woman's Hospital, 517 So.2d 217 (La.App.1987), cert. denied, 518 So.2d 511 (La.1988), and Gordon v. Texaco, No. 86-1399, 1989 WL 133102 (E.D.La. Oct. 25, 1989), aff'd, 899 F.2d 13 (5th Cir.1990), for the proposition that "food preparation work is not specialized work." While consideration of these cases is helpful, they are not dispositive. The preparation and serving of food, in myriad settings, cannot be classified as specialized or non-specialized as a matter of law. What is at issue is the performance of the contractor in the case at bar. We have recognized that "Berry and other Louisiana Supreme Court decisions have emphasized that the principal's entitlement to the statutory employer defense must be determined on the facts of each case." Seeney v. Citgo Petroleum Corp., 848 F.2d 664, 666 (5th Cir.1988) (citations omitted). The district court opinion does not reflect that this was done. The district court concluded that the contract work "was not specialized per se " but we find no analysis as to whether Morrison's performance at the Michoud plant was not in fact specialized. This analysis is imperative.
 
 
 32
 The trial court's second rationale for concluding that the contract work was not specialized was triggered by the fact that MM performed its own large-scale food-service operations at its other major facilities. Cf. Mozeke, 856 F.2d at 725 ("Since the skill, education and experience necessary to perform the contract work is possessed by personnel in the paper manufacturing business in general, and by [the principal's] employees at other plants, we cannot reasonably conclude that the contract work was specialized per se."). Though highly relevant, this fact in itself does not prove that the contract work requires a degree of skill, training, experience, education and/or equipment normally possessed by those outside the contract field. MM may possess this competence but most others outside the contract field may not; the proper inquiry is not the comparison between the contract work and MM but, rather, between the contract work and those outside the field of the contract work. Berry, 488 So.2d at 938.
 
 
 33
 Finding a genuine issue of material fact whether Morrison's contract work was specialized or non-specialized, we must VACATE the summary judgment and REMAND for further proceedings.[5]
 
 
 
 [1]
 Chief Judge Domengeaux of the Third Circuit issued a concurring opinion in Fountain v. Central Louisiana Elec. Co., 578 So.2d 236 (La.App.), cert. denied, 581 So.2d 707 (La.1991), for the sole purpose of stating that the amendment to 1061 was to be applied prospectively only and not retroactively
 I think it should be mentioned that by Acts 1989, No. 454, effective January 1, 1990, the Legislature amended La.R.S. 23:1061(A), apparently overruling Berry and much of the other jurisprudence defining "trade, business, or occupation." Considering the sweeping change this amendment makes in our prior law, I think it is clearly substantive and should not be applied retroactively.
 
 
 [2]
 See e.g., Fountain, 578 So.2d at 239 (Domengeaux, J., concurring); Boudreaux v. Freeport Chem. Co., 576 So.2d 615, 616-17, 620-21 (La.App.1991); Dye v. Ipik Door Co., 570 So.2d 477, 480-81 (La.App.1990); Fontana v. Hibernia Nat'l Bank, 568 So.2d 569, 570-71 (La.App.1990); Manuel v. Odeco, Inc., 563 So.2d 1179 (La.App.1990); LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312 (La.App.1990); Singleton v. Marine Shale Processors, 560 So.2d 496 (La.App.1990); cf. Croy v. Bollinger Machine Shop & Shipyard, Inc., 578 So.2d 945 (La.App.1991) (noting that there was no evidence for the three-tier Berry analysis to invoke the statutory employer immunity); Crochet v. Westminster City Center Properties, 572 So.2d 720, 722 (La.App.1990) (citing old version of 23:1061 in two-contract theory defense); Rosier v. H.A. Lott, Inc., 563 So.2d 1321 (La.App.), cert. denied, 568 So.2d 1058 (La.1990) (same)
 Two federal district courts have considered the question and concluded that the amendment is retroactive because it falls under the interpretive rubric. In Sawyer v. Texaco Refining and Marketing, No. 89-2734, 1991 WL 28986 (E.D.La. Feb. 25, 1991), the court concluded that the 1989 amendment to 1061 was interpretive because it "did away with the tortured jurisprudential construction of La.R.S. 23:1061 brought on by Berry and its progeny and returned to the earlier principles." Sawyer, at 2. In Brock v. Chevron Chem. Co., 750 F.Supp. 779 (E.D.La.1990), the court concluded the amendment is interpretive because it is a legislative response specifically rejecting the "judicial gloss" the Berry court added to 23:1061. Brock, 750 F.Supp. at 783.
 
 
 [3]
 La.R.S. 1:2 provides that no statute is retroactive unless expressly so stated. Louisiana courts have consistently applied this provision only to substantive laws as distinguished from procedural or interpretive laws. Socorro v. New Orleans, 579 So.2d 931 (La.1991); Lott v. Haley, 370 So.2d 521 (La.1979)
 
 
 [4]
 See Berry, 488 So.2d at 937 ("[A]lmost everything could be said to be integrally related to the principal's trade, business or occupation.") (citations omitted); House Committee on Labor and Industrial Relations, May 26, 1989, at 16 (comments by Denis Juge, representing the Louisiana Association of Business and Industry, during the discussion of House Bill No. 1431) ("[A]n attempt was being made to turn back the clock. Many court decisions ... had expanded the law.... [T]he 'Berry ' decision took away the statutory employer defense, and the change in this particular section is an attempt to try and bring the law back to its posture before the 'Berry ' decision was made and protect the statutory employer.")
 
 
 [5]
 Because of its ruling the district court pretermitted the two-contract issue. Should same prove appropriate, on remand it would be free to consider that defense