h SULLIVAN, Judge.
This suit involves the temporal applicability of a legislative act that allows a taxpayer to elect an alternative method of computing the use tax on measurement-while-drilling (MWD) systems. Intervenor-appellant, Baker Hughes Inteq, appeals from a summary judgment rendered by the trial court in favor of plaintiff-appellee, the Lafayette Parish School Board, Sales Tax Division. The trial court decreed that Act 12719 of the 1990 Louisiana Legislature applies prospectively only from its effective date of July 1, 1990. The trial court also held the act to be substantive in nature.
On appeal, Baker Hughes Inteq asserts the trial court erred in (1) finding that La. R.S. 47:301(3)(d), enacted by Act 719, applies prospectively only; (2) failing to interpret Act 719 in a light most favorable to the taxpayer; (3) failing to consider legislative intent; and, (4) finding La.R.S. 47:301(3)(d) is substantive, not procedural or interpretive, law. On review, we conclude that the trial court’s judgment is correct. Therefore, we affirm.
FACTS
In 1990, at the urging of Teleco Oilfield Services, Incorporated, the predecessor in interest to Baker Hughes Inteq, the Louisiana Legislature passed Act 719, enacting La. R.S. 47:301(3)(d) as follows:
(i) In the case of interchangeable components located in Louisiana, a taxpayer may elect to determine the cost price of such components as follows:
(aa) The taxpayer shall send to the secretary written notice of the calendar month selected by the taxpayer as the first month for the determination of cost price under this Paragraph (the “First Month”). The taxpayer may select any month. The *736 taxpayer shall send to the secretary notice of an election to designate a First Month on the first day of the designated First Month, or ninety days from July 1, 1990, whichever is later.
(bb) For the First Month and each month thereafter, cost price shall be based and use tax shall be paid only on one-sixtieth of the aggregate cost price of the interchangeable components deployed and earning revenue within Louisiana during the month, without regard to any credit or other consideration for Louisiana state, political subdivision, or school board use tax previously paid on such interchangeable components.
(cc) Any election made under this Paragraph shall be irrevocable for a period of sixty consecutive months inclusive of the First Month. If at any time after the sixty-month period the taxpayer revokes its election, ^no credit or other consideration for use taxes paid pursuant thereto shall be applied to any use tax liability arising after such revocation.
(ii)(aa) For purposes of this Paragraph, “interchangeable component” means a component that is used or stored for use in measurement-while-drilling instruments or systems manufactured or assembled by the taxpayer, which measurement-while-drilling instruments or systems collectively generate eighty percent or more of their annual revenue from their use outside of the state.
(bb) “Measurement-while-drilling instruments or systems” means instruments or systems which measure information from a downhole location in a borehole, transmit the information to the surface during the process of drilling the borehole using a wireless technique, and receive and decode the information on the surface.
(iii) The method for determining cost price of interchangeable components provided for in this Paragraph shall apply to any use taxes imposed by a local political subdivision or school board. For purposes of that application, the words “political subdivision” or “school board” as the case may be, shall be substituted for the words “Louisiana” or “State” in each instance where those words appear in this Paragraph and an appropriate official of the local political subdivision or school board shall be designated to receive the notices required by this Paragraph.
(Emphasis added.) Section two of Act 719 provides “[t]his Act shall become effective on July 1,1990.”
Prior to the enactment of Section 301(3)(d), a taxpayer utilizing MWD systems was subject to the general use tax law and incurred liability for the entire amount of the use tax immediately upon the usage or storage for use of the components or systems in Louisiana. Section 301(3)(d) empowers a taxpayer to elect the alternative method of payment of the use tax as provided therein. The alternative method allows, the taxpayer to apportion payment of the use tax over the five-year useful life of the MWD system, paying one-sixtieth of the tax during each month the component is deployed and earning revenue in Louisiana.
Teleeo elected the alternative method and sent notice of its decision to the Sales Tax Division. Teleeo selected May 1, 1985 as its “First Month.” Carl Meche, ^Supervisor of the Sales Tax Division, rejected Teleeo’s election of May 1, 1985 and returned Teleco’s check for payment of use tax for the period from October 1, 1987 to February 28, 1990. Mr. Meche informed Teleeo that its “First Month” selection must be a month following Act 719’s effective date of July 1,1990.
On December 21,1990, the Sales Tax Division filed suit for declaratory judgment against the State of Louisiana, Department of Revenue and Taxation and its then-Secretary, Leon P. Tarver, II. The Sales Tax Division alleged that Act 719 is substantive law which may only apply prospectively. It maintained that retroactive application would impair the contract rights of its bondholders in violation of Article I, Section 23 of the Louisiana Constitution, Article I, Section 10, Clause 1 of the United States Constitution and La.R.S. 33:2737.2.
Teleeo intervened in the proceedings as a Lafayette Parish taxpayer whose rights are directly connected to the outcome of the *737 Sales Tax Division’s suit for declaratory judgment.
After discovery, the Sales Tax Division moved for summary judgment, asserting that there exists no material factual issue that Act 719, enacting La.R.S. 47:301(3)(d), is applicable prospectively only from its effective date. The Sales Tax Division asserted its entitlement to judgment as a matter of law. Baker Hughes Inteq, the successor to Teleeo, opposed the motion. It also filed its own motion for summary judgment: It attached to its motion eleven exhibits, including the original senate bill, changes made to the bill as it proceeded through the legislative process, and a transcript of the House Ways and Means Committee hearing at which the bill was discussed.
The trial court conducted a hearing on only the Sales Tax Division’s motion on September 30, 1996. Baker Hughes Inteq’s motion was not heard on this date. At the |5conclusion of the arguments, the trial court rendered oral reasons for judgment, which provide pertinently as follows:
It seems to me that if [State Representative Raymond] Laborde and those members of the [House Ways and Means] committee at the time had it in their intent to retroactively apply this to unprescribed periods, it would have been very easy to do. All you would have had to say is “This applies to unprescribed periods.” They didn’t do it.... It wasn’t done, and in my opinion the statute which talks about the months and the time in which you have to elect it is done so and it doesn’t leave it open to any month, any year, any time. It’s months after the effect of the legislative date. And as such, it’s prospective in its application_I also find that it’s substantive — it’s substantive in its application as it changes the law and the effect of the law....I grant the motion for summary judgment.
LAW
The appellate review of summary judgment is a de novo review. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730. On review, we apply the same legal standards as did the trial court. Potter v. First Federal Savings & Loan, 615 So.2d 318 (La.1993). In this regard, summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(B). Summary judgment procedure is now favored, and it shall be construed to “secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.” La.Code Civ.P. art. 966(A)(2).
The mover’s burden of proof is explained in paragraph C of Article 966 as follows:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is | ¡¡before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Subparagraph (C)(2) was enacted pursuant to Act 483, § 1, of 1997, effective July 1, 1997. Section four of that act provides:
The purpose of Sections 1 and 3 of this Act is to clarify Acts 1996, No. 9, § 1 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96), 685 So.2d 691 [, writ denied, 97-281 (La.3/14/97); 690 So.2d 41.]
*738 In the Hayes case, this court determined that the 1996 revision of summary judgment law, pursuant to Act 9 of the 1996 First Extraordinary Session, changed the law in two ways: (1) supporting documentation should henceforth be equally scrutinized (instead of close scrutinization of the mover’s papers and indulgent treatment of the non-mover’s documents), and (2) the former overriding presumption in favor of trial on the merits was removed. This court concluded that the changes brought Louisiana’s summary judgment law in line with Federal Rule of Civil Procedure 56(c), and we therefore adopted “the federal courts’ more liberal standard of summary judgment.” Id., p. 7; 685 So.2d at 695.
In evaluating the propriety of the granting of a motion for summary judgment, we must refer to the applicable substantive law in the case. To affirm a trial court’s grant of summary judgment, we must determine that reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the trial court. Washington v. State of Louisiana, Dep’t of 7Transp. & Dev., 95-14 (La.App. 3 Cir. 7/5/95); 663 So.2d 47, writ denied, 95-2012 (La.11/13/95); 664 So.2d 405.
The issue in this case is whether La.R.S. 47:301(3)(d) applies prospectively only or both prospectively and retroactively. The applicable law is La.Civ.Code art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Additionally, La.R.S. 1:2 provides: “No Section of the Revised Statutes is retroactive unless it is expressly so stated.”
In Segura v. Frank, 93-1271, 93-1401, p. 12 (La.1/14/94); 630 So.2d 714, 723, the supreme court defined the three classifications of laws as follows:
Substantive laws establish new rules, rights, and duties or change existing ones. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992); Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1339 (La.1978). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223, 1226 (La.1985); Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1224 (La.1984). Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment. St. Paul Fire & Marine, 609 So.2d at 817; Ardoin, 360 So.2d at 1339.
In St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816-17 (La.1992), the supreme court explained the applicable analytical framework as follows:
Although LSA-C.C. Art. 6 and LSA-R.S. 1:2 superficially appear to conflict, this conflict is apparent, not real, as the jurisprudence has construed the general proscription against retrospective effect of laws, codified in LSA-R.S. 1:2 and LSA-C.C. Art. 6 (formerly Art. 8), as applying only to substantive, as opposed to procedural or interpretive, laws. Pierce [v. Hobart Corp., 939 F.2d 1305, 1308, n. 3 (5th Cir.1991) ]; Lott [v. Haley, 370 So.2d 521 (La.1979) ].
In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), we outlined a two-step analysis for resolving this statutory construction question under LSA-C.C. Art. 6:
IsFirst, we must ascertain whether in the enactment the legislature expressed its intent regarding retroactive or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
599 So.2d at 1063.
The first step is determining whether the legislature expressly provided for retroactive application; this step is resolved by examining the specific language contained in the act. See Jones, Legislative Checklist: Elements of a Bill, 35 La.Bar J. 349, 351 (1988) (legislature has the discretionary authority to include in a bill a *739 prospective or retrospective application clause).
(Footnote omitted.)
The second step, if necessary, requires classification of the enactment with regard to the definitions of substantive, procedural, and interpretive laws found in Segura, 630 So.2d 714. See also Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La.5/22/95); 655 So.2d 303; Stelly v. Overhead Door Co. of Baton Rouge, 94-569 (La.12/8/94); 646 So.2d 905; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94); 633 So.2d 1235.
In Smith, 609 So.2d 809, the act in question provided an effective date of January 1, 1990. The court found that such a delayed effective date evidenced “some, albeit inconclusive, intent of prospective application.” Id., at 817. The court concluded that the act contained “no clear and unmistakable expression of legislative intent regarding retrospective or prospective application.” Id. In the present case, Act 719, § 2 similarly provides only that, “This Act shall become effective on July 1, 1990.” Therefore, we are constrained to conclude that, upon examining the specific language of Act 719, the act contains no clear expression of legislative intent concerning retrospective or prospective application.
|9Baker Hughes Inteq’s contention that we should look to the various pre-passage versions of the act and the House Ways and Means Committee transcript to determine legislative intent is without merit. The Smith case clearly limits our inquiry to the specific language of the act. Therefore, the evidence presented by Baker Hughes Inteq is not relevant to the determination of whether the legislature intended retroactive application.
We next determine whether Act 719 is substantive, procedural, or interpretive law. Prior to the passage of the act, a taxpayer was hable for a tax of “two per centum (2%) of the cost price of each item or article of tangible personal property” when the property is used or stored for use in this state. La.R.S. 47:302(A)(2). “Cost price” could only be determined with reference to Section 301(3)(a)-(c), which provided, and still provides substantively:
(a) “Cost price” means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service cost, except those service costs for installing the articles of tangible personal property if such cost is separately billed to the customer at the time of installation, transportation charges, or any other expenses whatsoever, or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less.
(b) In the case of tangible personal property which has acquired a Louisiana tax situs and is thereafter transported outside the state of Louisiana for repairs performed outside the state of Louisiana and is thereafter returned to the state of Louisiana, the cost price shall be deemed to be the actual cost of any parts and/or materials used in performing such repairs, if applicable labor charges are separately stated on the invoice. If the applicable labor charges are not separately stated on the invoice, it shall be presumed that the cost price is the total charge reflected on the invoice.
(e) “Cost price” shall not include the supplying and installation of board roads to oil field operators if the installation charges are separately billed to the customer at the time of installation.
| ipThus, prior to the effective date of section 301(3)(d), the taxpayer was required to pay the two percent of the property’s “cost price” as use tax at the moment the property was used or stored for use in Louisiana. After July 1, 1990, the use tax rate remains at two percent. However, the taxpayer using or storing interchangeable components may alternatively elect to have the “cost price” determined pursuant to Section 301(3)(d). To comply, the taxpayer must designate “any month” as the “First Month.” La.R.S. 47:301(3)(d)(i)(aa). The use tax is thereafter “paid only on one-sixtieth of the aggregate cost price of the interchangeable components deployed and earning revenue within Louisiana during the month.” La.R.S. *740 47:301(3)(d)(i)(bb) [emphasis added]. Section 301(3)(d)(ii)(aa) however, provides that, to qualify as an “interchangeable component,” the MWD instruments or systems in which the component is used must “generate eighty percent or more of their annual revenue from their use outside the state.”
For taxpayers that elect the alternative “cost price” and use tax determination method, Act 719 of 1990 clearly established new rights. The taxpayer is liable for one-sixtieth of the total tax per month if and only if the component is deployed and earning revenue in Louisiana during that particular month. The taxpayer is only liable for components which are primarily used (generate eighty percent or more of their annual revenue) out of state. We conclude that, with the passage of this act, the taxpayer obviously receives a substantive benefit because, over the sixty month period during which the taxpayer is potentially liable, the entire use tax will not be owed, because of the out of state use requirement. Even if a particular component is stored and somehow generates revenue in this state for sixty consecutive months and is not used in a MWD system during that period either in or out of state, the electing taxpayer still receives a benefit since he owes one-sixtieth of the use tax each month for sixty months, instead of owing the entire tax at the commencement of the storage. | nActuarially, paying one-sixtieth of a tax each month is of greater financial benefit to the electing taxpayer than paying the entire tax in the first month of the sixty-month period.
For these reasons, Section 301(3)(d), enabling the taxpayer the right to elect the alternative computation method, is substantive. Since the legislature did not clearly express an intent for Act 719 of 1990 to apply retroactively, Civil Code article six requires the act to apply prospectively only. As such, we hold that, if it chooses to make an election under Section 301(3)(d), Baker Hughes Inteq must select any month after July 1, 1990 as its “First Month” for calculation of the cost price and use tax.
DECREE
We affirm the trial court’s summary judgment rendered in favor of plaintiff-appellee, the Lafayette Parish School Board, Sales Tax Division, and against intervenor-appellant, Baker Hughes Inteq. All costs of this appeal are assessed to Baker Hughes Inteq.
AFFIRMED.